Case No. 23-1062

---

# United States Court of Appeals
# for the Sixth Circuit

---

## BROKERARTE CAPITAL PARTNERS, LLC,

*Plaintiff-Appellant,*

v.

## THE DETROIT INSTITUTE OF ARTS,

*Defendant-Appellee,*

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable George Caram Steeh
Case No. 2:23-cv-10066

_____

## APPELLANT'S EMERGENCY MOTION FOR AN IMMEDIATE INJUNCTION AND AN INJUNCTION PENDING APPEAL

_____

Aaron M. Phelps (P64790)
Neil Youngdahl (P82452)
VARNUM LLP
Counsel for Plaintiff-Appellant
Bridgewater Place, P.O. Box 352, Grand Rapids, Michigan 49501-0352
(616) 336-6000
amphelps@varnumlaw.com
neyoungdahl@varnumlaw.com

## **INTRODUCTION**

This case centers on a Vincent van Gogh painting titled "Liseuse De Romans" (also known as "the Novel Reader"; referred hereto as "the Painting").  Plaintiff Brokerarte Capital Partners, LLC, purchased the Painting in May 2017, and stored the artwork with a third-party.  That person soon cut off all communications with Brokerarte, and Brokerarte was unaware of the Painting's location for years.  The Painting resurfaced a few weeks ago at the Detroit Institute of Arts ("the DIA").  Once Brokerarte learned the Painting's location, it instituted this replevin action against the DIA to recover possession of its rightful property.

Throughout the proceedings below, nobody disputed that Brokerarte purchased the Painting in May 2017.  Nobody claimed that, since Brokerarte purchased the Painting, it transferred its ownership interest to anyone else.  And everyone agreed that the Painting is currently in the DIA's possession without Brokerarte's permission.  The DIA's sole reason for depriving Brokerarte of its property is that, in its view, courts cannot *compel* the museum to turn over the Painting because the State Department made certain determinations regarding this

artwork under the Immunity from Seizure Act, 22 U.S.C. § 2459(a).[1]  The district court agreed with the DIA's broad interpretation of the statute, denied Brokerarte's motion for a preliminary injunction, and dismissed Brokerarte's suit for lack of subject-matter jurisdiction.

The district court's interpretation of the Act—which underpins both its preliminary-injunction and subject-matter-jurisdiction decisions—goes beyond the statute's plain language. As explained below, one of the conditions precedent for application of the Act is that the Painting be in the United States "pursuant to an agreement entered into [with] the foreign owner or custodian thereof[.]" 22 U.S.C. § 2459(a).  The DIA failed to show that this condition is met here, but the district court overlooked this fatal flaw while showing inordinate deference to the State Department.

Accordingly, the district court erred as a matter of law in denying Brokerarte's requested injunctive relief and dismissing its suit.  This Court is therefore likely to reverse the district court's order and remand for further proceedings.  And because the DIA is currently free to deprive Brokerate of its rightful property at any time,

--------

[1] The Act provides a role for the "President or his designee."  The President delegated his authority under the Act to the Office of Public Diplomacy and Public Affairs, a component of the State Department.  (R. 15, PageID.141)

Brokerarte respectfully moves this Court for (1) an immediate injunction that requires the DIA to retain possession of the Painting pending this Court's decision on whether to grant an injunction pending appeal; and (2) an injunction pending appeal that requires the DIA to retain possession of the Painting until further order of this Court.[2]

## STATEMENT OF JURISDICTION

This appeal derives from the district court's Order and Judgment, both of which it entered on January 20, 2023. (Rs. 15 and 16). The district court's judgment is a "final decision" under 28 U.S.C. § 1291. Appellant filed a timely notice of appeal on January 23, 2023. (Notice of Appeal, R. 17).

Because of the parties' complete diversity of citizenship and the value of the injunctive relief sought, (Ver. Compl., R. 1, PageID.2), federal courts have

---

[2] Federal Rule of Appellate Procedure 8(a) provides that "[a] party must ordinarily move first in the district court for the following relief . . . an order . . . granting an injunction while an appeal is pending." However, such a motion would be "impracticable" here. Fed. R. App. P. 8(a)(2)(A)(i). The court has already ruled that it lacked any jurisdiction to enter an injunction and the court has already entered final judgment dismissing the case. Time is of the essence. The exhibition in which the DIA featured the Painting is now closed, (Ver. Compl. R. 1, PageID.4), so the DIA may move the Painting at any time. Requiring a futile motion in the district court would only increase the chance that the DIA will frustrate the purpose of Brokerarte's suit by disposing of the Painting. Fed. R. App. 8(a)(2)(A)(ii).

subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a).  Moreover, as explained below, the Immunity from Seizure Act, 22 U.S.C. § 2459(a), does not deprive the courts of jurisdiction.  And, in any event, courts have jurisdiction to consider whether the Act applies.  *Freed v. Thomas*, 976 F.3d 729, 739 (6th Cir. 2020) ("Of course, a federal court always has jurisdiction to determine its own jurisdiction.")

## STATEMENT OF THE CASE

### I.   STATEMENT OF FACTS

The relevant facts are contained in Brokerarte's Verified Complaint. (R. 1). The Verified Complaint's allegations were sworn to by its sole proprietor, Mr. Gustavo Soter.  (*Id*., PageID.6).  Brokerarte is an art brokerage company that buys, sells, and collects artwork, including paintings by world-renowned artists, and advises on art collections.  (*Id*., PageID.3).  In May 2017, Brokerarte purchased the Painting from Torrealba Holdings, Ltd., for $3.7 million.  (Bill of Sale, R. 1-1).  A third-party immediately took possession of the Painting.  (Verified Compl. PageID.4).  Brokerarte never transferred title or any interest in the Painting to this third-party.  (*Id*.).

Since the third party took possession of the Painting, Brokerarte has not known the Painting's location.  (*Id*.).  Recently, however, Brokerarte learned that the

4

Painting was in the DIA's possession, on display as part of the museum's "Van Gogh in America" exhibition. (*Id.*; Photograph Taken By Plaintiff's Counsel, R. 1-2). This exhibition ended on January 22, 2023. (Verified Compl., R. 1, PageID.4). Now that the exhibition is over, the DIA will surrender possession of the Painting to a third party. (*Id.*). If this happens, Brokerarte will lose the chance to recover the Painting, for which it has been searching for years. (*Id.*).

## II.  PROCEEDINGS BELOW

On January 10, 2023, Brokerarte filed suit in the Eastern District of Michigan, asserting one count of "Replevin/Claim and Delivery" under Michigan law. *See* M.C.L.A. § 600.2920 (R. 1, PageID.4). Brokerarte simultaneously moved for a temporary restraining order and immediate possession of the Painting pending final judgment. (R. 2). The district court found "[b]ased on the allegations in the Verified Complaint and on the Bill of Sale," that Brokerarte had established good cause to order the DIA to "refrain from damaging, destroying, concealing, disposing, moving, or using as to substantially impair it value," the Painting until the court could hear argument on the remainder of the motion. (Order Pending Hearing, R. 5, PageID.34).

The DIA filed a response to Brokerarte's motion. (R. 12). The DIA did not dispute Plaintiff's ownership of the Painting, asserting only that true ownership is

"irrelevant" because the artwork is immune from judicial process under federal law. (*Id*., PageID.58). The DIA argued for a broad interpretation of the Immunity from Seizure Act, under which courts have no role in determining the Act's applicability and must reflexively defer to the State Department's opinion on how the Act applies in a given context. (R. 12, PageID.54-55, 60-61).

Brokerarte filed a reply, explaining that, on the current record, the court could not decide that the Act applied to the Painting because the DIA had failed to show that the Painting was imported "pursuant to an agreement entered into [with] the foreign owner or custodian thereof[.]" (R. 14, PageID.130-133).

On January 19, 2023, the district court held oral argument on Brokerarte's motion for preliminary injunctive relief. The next day, the court issued an "Opinion and Order Denying Plaintiff's Motion for Temporary Restraining Order and Possession Pending Final Judgment, Dissolving Order Pending Hearing, and Dismissing Case." (R. 15, Page ID # 138). Brokerarte filed a timely Notice of Appeal on January 23, 2023. (R. 17, Page ID # 151).

## STANDARD OF REVIEW

The order from which Brokerarte appeals is twofold. First, the district court denied Brokerarte's motion for a preliminary injunction, holding that "there is no likelihood of success on the merits[.]" (R. 15, PageID.147). Although this Court

typically reviews the denial of a preliminary injunction for an abuse of discretion, where—as here—the district court's ruling turned solely on the likelihood-of-success factor, (R. 15, PageID.147), this Court reviews the decision de novo, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 598, 600 (6th Cir. 2014). And this Court may always reverse the district court if it "improperly applied the governing law, used an erroneous legal standard, or relied upon clearly erroneous findings of fact." *Cty of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc).

Second, the district court dismissed Brokerarte's suit for lack of subject-matter jurisdiction. This Court also reviews that decision de novo. *Heydon v. MediaOnce of Southeast Michigan, Inc.*, 327 F.3d 466, 469 (6th Cir. 2003).

## SUMMARY OF THE ARGUMENT

Brokerarte's motion and appeal depends on how this Court answers one question: Does the Immunity from Seizure Act require courts to automatically dismiss cases without deciding whether the Act's requirements are met? The answer is "no." Although Congress delegated certain inquiries under the Act to the Executive Branch, the statute's plain language requires courts to confirm certain conditions before immunity attaches. The DIA, as the party asserting immunity, bears the burden of satisfying these conditions. Because the district court defined

the deference owed to the Executive Branch under the Act too broadly, and did not hold the DIA to its proofs, Brokerarte is likely to succeed on appeal. And given the harm that Brokerarte will suffer if the Painting disappears again during the pendency of this litigation, immediate injunctive relief is appropriate.

## **ARGUMENT**

Federal Rule of Civil Procedure 64 "makes available to the Federal Courts state remedies for the seizure of property at the commencement of an action." *Jacobson v. Coon*, 165 F.2d 565, 567 (6th Cir. 1948); Fed. R. Civ. P. 64(b). M.C.R. 3.105 and M.C.L. 600.2920 allow recovery of one's property. Specifically, M.C.R. 3.105(E) provides for the filing of a verified motion for possession pending final judgment, a prompt hearing, and a variety of interim relief to be granted by the Court should the circumstances so warrant.

The rule further provides that after proofs have been taken on the verified motion for possession pending final judgment, the Court may order "whatever relief the evidence requires." M.C.R. 3.105(E)(4). This may include ordering the property to be seized and turned over to the plaintiff. *See* M.C.R. 3.105(E)(4)(c).

A motion for possession pending final judgment "is comparable to a motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, and federal courts . . . often consider standards of both rules when faced with such a motion."

8

*Sutton Leasing, Inc. v. Veterans Rideshare, Inc.*, 468 F. Supp.3d 921, 929–30 (E.D. Mich. 2020). This Court should therefore consider: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *Id.* at 930 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). These four factors constitute a balancing test, "not prerequisites that must be met." *Id.*

## I.      Brokerarte is Likely to Succeed on the Merits Both Before this Court and on Remand.

"To prevail on a claim and delivery action, Plaintiff must prove that Defendants unlawfully took or detained goods or personal property, to which Plaintiff has a right to possess." *Sutton Leasing,* 468 F. Supp.3d at 938 (E.D. Mich. 2020).

At no point during these proceedings has anyone argued that Plaintiff is not the Painting's legal owner. Plaintiff's Bill of Sale establishes that it purchased the Painting on May 3, 2017, and there is no evidence of any other transaction that would have given good title to anyone else. At this time, all facts and circumstances known to Plaintiff indicate that it remains the legal owner of the Painting. As such, Plaintiff has a clear right to possess it. *Rassner v. Federal Collateral Soc.*, 299 Mich. 206, 213; 300 N.W. 45, 48 (1941); ("[P]ossession is one of the most valuable incidents

9

of ownership.").  The DIA is ignoring Brokerarte's right to possession, which means it is unlawfully detaining the Painting.  Brokerarte is therefore likely to succeed on its replevin claim.

### A.     The District Court Misread the Immunity from Seizure Act.

The district court concluded that Brokerarte's ownership interest in the Painting is irrelevant because the Immunity from Seizure Act places the Painting beyond the courts' reach.  The Act reads:

> Whenever any work of art or other object of cultural significance is imported into the United States from any foreign country, **pursuant to an agreement entered into between the foreign owner or custodian thereof** and the United States or one or more cultural, educational, or religious institutions with the capacity to appropriately curate such object within the United States providing for temporary storage, conservation, scientific research, exhibition, or display within the United States at any cultural exhibition, assembly, activity, or festival administered, operated, or sponsored, without profit, by any such cultural, educational, or religious institution with the capacity to appropriately curate such object, no court of the United States, any State, the District of Columbia, or any territory or possession of the United States may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object if before the importation of such object the President or his designee has determined that such object is of cultural significance and that temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest, and a notice to that effect has been published in the Federal Register.

*Id*. (Emphasis added).

In holding that the Act applied to the Painting, the district court relied largely on its perception of the Act's purpose. (R. 15, PageID.145). Citing legislative history, the Court determined that the Act "serves the important national interest of 'contributing to the educational and cultural development of the people of the United States'" (R. 15, PageID.145-146) (quoting H.R. Rep. No. 1070, 89th Cong., 1st Sess. 2. (1965)). The Court concluded that "[r]equiring an institution to ultimately bear the burden of proof in court that a foreign lender had a legal right to loan an object before it can assert that the objection is immune from seizure would be circuitous, would not further the Act's stated purpose and would likely result in a chilling effect on cultural exchanges." (R. 15, PageID.146). The Court held that it was enough that the President's designee had determined that the Act's requirements were met and that "the agency's determination is entitled to deference." (*Id.*).

The district court's reading of the Act is untenable. The "starting point" for a "[a] matter requiring statutory interpretation . . . is the language of the statute itself." *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011). The district court's reading ignores the Act's predicate phrase, which qualifies the scope of the statute's jurisdiction-stripping effect, and shuffles other phrases throughout the provision. The result is a delegation of judicial authority that is simply not supported by the statute.

Properly read, the Act's plain language imposes at least nine requirements for immunity:

(1) **the Importation Requirement** (i.e. the object "is imported into the United States from any foreign country");

(2) **the Agreement Requirement** (i.e. that the object is imported "pursuant to an agreement entered into [with] the foreign owner or custodian thereof");

(3) **the Temporary-Duration Requirement** (i.e. that the agreement is "providing for temporary storage, conservation, scientific research, exhibition, or display within the United States");

(4) **the Event Requirement** (i.e. that the object is to be used "at any cultural exhibition, assembly, activity, or festival");

(5) **the Without-Profit Requirement** (i.e. that the event be "administered, operated, or sponsored, without profit");

(6) **the Curator Requirement** (i.e. that the object be used "by any such cultural, educational, or religious institution with the capacity to appropriately curate such object");

(7) **the Cultural-Designation Requirement** (i.e. that the State Department make a preemptive determination that the object "is of cultural significance");

(8) **the National Interest Designation Requirement** (i.e. that the State Department make a preemptive determination that the object's temporary use in the United States is in the "national interest");

(9) **the Notice Requirement** (i.e. that the State Department provide proper notice of its determinations before the object's importation).

*See, generally*, 22 U.S.C. § 2459(a). To be sure, courts are not in the best position to examine all nine requirements. Brokerarte agrees that the Court should

defer to the State Department on the substantive inquiries underpinning the seventh and eighth requirements (i.e. whether the object is of cultural significance and its display is in the national interest).  Those are exercises in executive judgment, for which courts of law are ill-equipped.  And, more importantly, Congress clearly intended for the Executive Branch to make those calls.  *See* 22 U.S.C. § 2459(a) (providing immunity "whenever" certain conditions are met and "if before the importation of such object *the President or his designee has determined* that such object is of cultural significance and that temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest.) (Emphasis added).

Congress did not, however, delegate examination of the Act's threshold or procedural conditions (denoted above as requirements (1)-(6) and (9)) to the Executive Branch.  The "determination" language comes too late in the statute for that reading to be plausible.[3]  By placing this language where it did, Congress made clear that only two questions should be answered by the Executive.  The rest are

---

[3] The district court's reading would be more persuasive if the Act read: "Whenever **[the President or his designee has determined]** any work of art or other object of cultural significance is imported into the United States from any foreign country, pursuant to an agreement entered into between the foreign owner or custodian thereof . . ."

simple questions of statutory compliance, which are answered by looking to the facts in the record. Interpreting a statute, and applying that statute to facts, is "the bread-and-butter work of the federal courts." *See United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 336 (6th Cir. 1998).

Notably, before this litigation, the DIA agreed with this plain-language reading of the statute. In a letter to the State Department regarding the Van Gogh exhibition, the DIA's Registrar of Exhibitions requested only that the State Department "make the determinations that the works coming from abroad for this exhibition are of cultural significance, that their temporary exhibition . . . is in the national interest; and that there be publication to that effect in the Federal Register[.]" (R. 12-6, PageID.106). The Registrar then provided her understanding of how immunity attaches, based on the Act's plain language:

> I understand that in any judicial proceedings involving these works of art, **if a United States court finds** the above determinations have been made, timely publication has occurred, **and that the other provisions of 22 U.S.C. § 2459 have been met**, the court could grant immunity from judicial seizure to the work or works of art.

14

(*Id*.) (emphasis added).  This is how the statute is supposed to work.  The State Department makes the cultural-significance and national-interest determinations, and the court handles the rest.[4]

### B.     The DIA Did Not Meet Its Burden to Show that the Act Applies.

When Congress immunizes certain actions from judicial review by statute, the party invoking the statute bears the burden to show its applicability.  *See, e.g. O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (applying the Foreign Sovereign Immunity Act's burden-shifting framework, under which "[t]he party claiming FSIA immunity bears the initial burden of proof of establishing a prima facie case that it satisfies the FSIA's definition of a foreign state" and "retains the burden of persuasion throughout this process.").  And because "a jurisdictional bar is not to be expanded beyond its precise language," *ANA Intern., Inc., v. Way*, 393

---

[4] A narrow reading of the Executive's power to deprive the judiciary of subject-matter jurisdiction through the Act also avoids separation-of-powers and nondelegation concerns. "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Hamer v. Neighborhood Housing Srvs. of Chicago*, 138 S. Ct. 13, 17 (2017).  Yet, under the district's reading, the *Executive* can unilaterally declare certain objects beyond the court's jurisdiction.  Given the constitutional questions that a broad interpretation raises, a narrower reading would be appropriate, even if the text was ambiguous. *See Hamama v. Adducci*, 946 F.3d 875, 880 (6th Cir. 2020) ("Constitutional avoidance permits a court to choose between competing plausible interpretations of a statutory text, one of which implicates constitutional problems the other would avoid.")

F.3d 886, 891 (9th Cir. 2004), a court must require parties asserting the Immunity from Seizure Act to show that all nine statutory conditions are met before it concludes that it lacks jurisdiction.

Below, the DIA failed to meet its burden in multiple respects, but most glaringly, it failed to show that the Painting was imported "pursuant to an agreement entered into between the foreign owner or custodian thereof and the United States or one or more cultural, educational, or religious institutions with the capacity to appropriately curate such object within the United States[.]" 22 U.S.C. 2459(a). The Court cannot ignore the words "foreign owner or custodian." *Smith v. Babcock*, 19 F.3d 257, 263 (6th Cir. 1994) ("Interpretations which . . . render some portion of the text superfluous are to be avoided."). Put simply, a prerequisite for immunity under the Act is that the object's "foreign owner or custodian" is on one side of the loan agreement.

The requirement that the object be loaned from a foreign owner or custodian makes sense when considering the Act's purpose. Although the district court inferred certain purposes based on the Act's legislative history, this Court has made clear that Congress establishes a statute's purpose "by negotiating, crafting, and enacting statutory text," and "[i]t is that text that controls, not a court's after-the-fact reevaluation of the purposes behind it." *Arangure v. Whitaker*, 911 F.3d 333, 345

(6th Cir. 2018).[5]  By requiring that the "foreign owner or custodian" be involved in the loan, the Agreement Requirement shows that the Act is intended to protect foreign owners who lend cultural objects from seizure of those objects by non-owners.

This purpose is also borne out in practice.  The mine-run Immunity from Seizure case involves a domestic creditor seeking to satisfy a judgment against a foreign entity by seizing property that the entity loaned to an American institution. *See, e.g., Agudas Chasidei Chabad of United States v. Russian Federation*, 798 F. Supp.2d 260, 270 (D.D.C. 2011) (determining whether plaintiff could execute a default judgment against the Russian Federation by seizing objects that would fall within the scope of the Immunity from Seizure Act); *Magness v. Russian Federation*, 84 F. Supp.2d 1357, 1360 (S.D. Ala. 2000) (same).

---

[5] The Act's legislative history is also a good example of the adage that "[j]udicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends."  *Exxon Mobil Corp., v. Allapattah Srvs., Inc.,* 545 U.S. 546, 568 (2005).  For example, when the Judiciary Committee favorably reported the Act to the whole House of Representatives, it relied on a letter submitted by Deputy Attorney General Ramsey Clark, who explained that the bill would "render immune from seizure under judicial process objects of art brought in the United States pursuant to an agreement between the U.S. Government (or a U.S. cultural or educational institution) and the *foreign owner* for temporary exhibition in the United States[.]"  (R. 12-3, PageID.74 (Emphasis added)).  This again indicates that the bill was intended to protect foreign owners (in this case, Brokerarte).

Thus, the Act seeks to preserve the foreign owner's rights in cultural objects; it does not close the courthouse door to a foreign owner seeking to *recover* its property through judicial process.  This is why Congress included the requirement that the loan agreement be with the object's "foreign owner or custodian."  And, here, the DIA has failed to show that this requirement is met.  As the Verified Complaint and Bill of Sale demonstrate, Brokerarte Capital Partners is the foreign owner of the Painting.  This entity did not contract with the DIA for the Painting's temporary exhibition.

Moreover, even if the DIA received the Painting from *someone*, that does not mean that the lender is the Painting's custodian.  The Act does not define the word "custodian" which means this Court looks to that term's "ordinary meaning" found in dictionary definitions.  *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022).  As relevant here a "custodian" is "one entrusted with guarding and keeping property[.]"  Merriam Webster, https://www.merriam-webster.com/dictionary/custodian#legalDictionary. (last accessed January 23, 2023).  The word "entrust" means "to commit to another with confidence." *Id.* https://www.merriam-webster.com/dictionary/entrust.    Read together, these definitions show that one is a "custodian" only to the extent that they possess property with the owner's confidence.  Possession beyond the owner's authorization

therefore must strip them of the "custodian" label; a thief is not a custodian of property, no more than a kidnapper is a child's custodian. Here, Brokerarte never granted possession of the Painting to any party for the purposes of lending out its property, so the Painting has no proper "custodian."

In any event, the DIA has not disclosed any basis to conclude that the party it contracted with was the Painting's "custodian" under any definition of that word. This information is solely in the DIA's possession because the identity of the lender is not publicly available. The placard displayed next to the Painting stated only that it is on loan from a "Private Collection, Sao Paulo." (R. 1-2, PageID.10). Likewise, the DIA's "application for immunity from judicial seizure" noted only that the Painting was from a "Private Collection" in "Sao Paulo, Brazil." (R. 12-7, PageID.109). Of the 27 objects listed in the application, only one other work so vaguely describes its origin. (*Id*., PageID.114) (describing *L'Arlesienne, Madame Ginoux* as being on loan from a "Private Collection" in "London, United Kingdom"). The others, without fail, identify their source. (*See, e.g.*, *Head of Peasant*, which comes from the Royal Museum of Fine Works in Belgium, R. 12-7, PageID.109, or *Peach Trees in Blossom*, which comes from "The Samuel Courtauld Trust, the Courtauld Gallery," R. 12-7, PageID.114).

19

The closest that the DIA gets to satisfying the Agreement Requirement comes in the Declaration of Dr. Jill Shaw.  (R. 12-2).  There, Dr. Shaw asserts that the Painting is "on loan to the DIA from a foreign lender."  (R. 12-2, PageID.69).  This testimony is circular: anything that is "on loan" is "from a lender."   Accordingly, this assertion does nothing to establish that this foreign lender is properly considered the owner or custodian of the Painting.

Absent Defendant's showing that the DIA is in possession of the Painting "pursuant to an agreement entered into [with] the foreign owner or custodian thereof," § 22 U.S.C. 2459(a), the Immunity from Seizure Act does not apply to the Painting.

## II.   <u>The Other Preliminary Injunction Factors Weigh in Brokerarte's Favor</u>.

Granting immediate injunctive relief will save Brokerarte from irreparable injury.  Harm is irreparable if it falls outside the scope of monetary damage. *Basicomputer v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages.").  The Painting is a Van Gogh; it is inherently unique, irreplaceable, and difficult to value.  And Brokerarte has been looking for its property for years.  If the Court fails to grant immediate injunctive relief, the Painting could disappear again and be lost forever.

20

No harm will be done to the DIA by this Court's grant of interim injunctive relief.  The DIA merely needs to retain possession of the Painting until this case is resolved.  And, finally, the public interest factor also weighs heavily in Brokerarte's favor.  "The public has an interest in ensuring the right to possession of one's own property is enforceable."  *Sutton Leasing*, 468 F. Supp.3d at 939.

### CONCLUSION

For these reasons, Brokerarte respectfully moves this Court for (1) an immediate injunction that requires the DIA to retain possession of the Painting pending this Court's decision on whether to grant an injunction pending appeal; and (2) an injunction requiring the DIA to retain possession of the Painting pending this appeal.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendants-Appellants

Date: January 25, 2023            By:*/s/* Aaron M. Phelps
                                                     Aaron M. Phelps (P64790)
                                                     Neil Youngdahl (P82452)
Business Address, Telephone, and E-mail:
                                                     Bridgewater Place, P.O. Box 352
                                                     Grand Rapids, MI 49501-0352
                                                     (616) 336-6000
                                                     amphelps@varnumlaw.com
                                                     neyoungdahl@varnumlaw.com

21

## **CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of Fed. R. App. P.
27(d)(2)(a) because this document contains 4,561 words.

2.      This document complies with the typeface and type-style requirements
of Fed. R. App. P. 27(d)(1)(D) because this document has been prepared in a
proportionally spaced typeface using 14-point type.


Date: January 25, 2023                          By: */s/*  Aaron M. Phelps
                                                     Aaron M. Phelps (P64790)
                                                     amphelps@varnumlaw.com

## **CERTIFICATE OF SERVICE**

I certify that on January 25, 2023, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of the filing to all ECF filing participants.


Date: January 25, 2023                        By: */s/* Aaron M. Phelps
                                                           Aaron M. Phelps (P64790)
                                                           amphelps@varnumlaw.com

# **ADDENDUM**

DESIGNATION  OF RELEVANT DISTRICT COURT DOCUMENTS

The relevant documents to this appeal are part of the electronic record in the

Eastern District of Michigan, Southern Division. To facilitate the Court's reference

to the electronic record, said documents, as referred to herein above, are as follows:

| RECORD ENTRY # | DESCRIPTION OF DOCUMENT | PAGE ID # |
|---|---|---|
| 15 | Opinion and Order Denying Plaintiff's Motion for Temporary Restraining Order and Possession Pending Final Judgment (ECF No. 2), Dissolving Order Pending Hearing (ECF No. 5)  and Dismissing Case | 138 |
| 17 | Notice of Appeal | 151 |