No. 23-1062

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

## BROKERARTE CAPITAL PARTNERS, LLC,

*Plaintiff-Appellant,*

v.

## THE DETROIT INSTITUTE OF ARTS,

*Defendant-Appellee,*

---

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable George Caram Steeh Case No. 2:23-cv-10066

---

## APPELLEE'S (1) RESPONSE TO EMERGENCY MOTION FOR AN IMMEDIATE INJUNCTION AND AN INJUNCTION PENDING APPEAL AND (2) EMERGENCY MOTION TO DISSOLVE ADMINISTRATIVE STAY AND TO DISMISS APPEAL

---

Dated: January 30, 2023

J. Michael Huget (P39150)
Andrew M. Pauwels (P79167)
Jonathan N. Ajlouny (P82030)
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
apauwels@honigman.com
jajlouny@honigman.com
*Attorneys for Defendant-Appellee*

# <u>TABLE OF CONTENTS</u>

Counter-Statement of Jurisdiction ............................................................v

I.    Introduction..................................................................................1

II.   Background..................................................................................1

    A.    The DIA's *Van Gogh in America* Exhibition........................1

    B.    The Immunity from Seizure Act. ........................................2

    C.    Immunity from Seizure Granted for the Painting. ...............5

    D.    The District Court's Summary Dismissal of Appellant's Suit..............7

    E.    Appellant's Appeal and Request for Emergency Relief. ....................10

III.  Legal Standard ..........................................................................10

IV.  Argument ...................................................................................11

    A.    Appellant Has No Likelihood of Success on the Merits....................12

          1.    The State Department Determined the Statute Applies............13

          2.    The State Department's Determination Must be Given Deference. ................................................................14

          3.    Appellant Grossly Misconstrues the Legislative Intent and, as a Result, the Scope of the Immunity from Seizure Act. ......................................................................15

    B.    An Injunction Would Not Cause Irreparable Harm to Appellant.......17

    C.    An Injunction Would Cause Substantial Harm to the DIA, to Other U.S. Art Museums, and to International Cultural Exchanges...........................................................................19

    D.    The Public Interest Would Not Be Served by Issuing an Injunction..........................................................................19

    E.    The Administrative Stay Must Be Immediately Dissolved. ..............20

F.      The Appeal Must Be Dismissed............................................21

V.    Conclusion ..............................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bates v. United States*,
   522 U.S. 23 (1997) ........................................................................................16

*Federal Republic of Germany v. Philpp*,
   141 S.Ct. 703 (2021) .....................................................................................17

*Magness v. Russian Federation*,
   84 F. Supp. 2d 1357 (S.D. Ala. 2000) .................................................5, 14, 15

*Malewicz v. City of Amsterdam*,
   362 F. Supp. 2d 298 (D.D.C. 2005) ..........................................................16, 17

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
   945 F.2d 150 (6th Cir. 1991) ........................................................................10

*Southern Glazer's Dists. of Ohio, LLC v. Great Lakes Brewing Co.*,
   860 F.3d 844 (6th Cir. 2017) ....................................................................12, 18

*United States v. Contents of Accounts*,
   629 F.3d 601 (6th Cir. 2011) ........................................................................12

*Winnett v. Caterpillar, Inc.*,
   609 F.3d 404 (6th Cir. 2010) ........................................................................19

STATUTES

22 U.S.C. § 2459(a) ........................................................................................*passim*

28 U.S.C. § 1605(h) ...............................................................................................17

COURT RULES

Fed. R. App. P. 8 .............................................................................................10, 11

Fed. R. App. P. 27 ...............................................................................................1, 20

**OTHER AUTHORITIES**

Executive Order 12388, 47 Fed.Reg. 46245 (1982) ................................................. 13

H.R. Rep. No. 1070, 89th .......................................................................................... 3

Rodney M. Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*, 6 Nw. J. Int'l L. & Bus. 1121 (1984-1985) .................. 4

## COUNTER-STATEMENT OF JURISDICTION

The DIA concedes that Appellant appeals from a final decision of the District Court.  However, the DIA states that, pursuant to the Immunity from Seizure Act, 22 U.S.C. § 2459(a), this Court lacks jurisdiction to enter any order regarding the Painting and therefore must dismiss the appeal.

## I.    INTRODUCTION

Plaintiff/Appellant Brokerarte Capital Partners, LLC ("Appellant") asks the Court to violate the Immunity from Seizure Act (22 U.S.C. § 2459) and interfere with Defendant/Appellee the Detroit Institute of Arts' ("DIA") custody and control of Vincent Van Gogh's *The Novel Reader* (the "Painting"). The Act prohibits any court in the United States—*including the District Court, as it held, and including this Court*—from issuing any injunction or entering any order that would in any way compel the DIA to take, or prohibit the DIA from taking, any action with respect to the Painting. Thus, this Court should: (1) deny Appellant's request for an injunction; (2) dissolve the administrative stay requiring the DIA to retain possession of the Painting; and (3) dismiss this appeal.[1]

## II.    BACKGROUND

### A.    The DIA's *Van Gogh in America* Exhibition.

On January 22, 2023, the DIA concluded *Van Gogh in America*, an exhibition celebrating the DIA's status as the first U.S. public museum to purchase a Van Gogh painting, his *Self-Portrait* (1887). (Shaw Decl. at ¶ 4, RE 12-2, Page ID # 68; *see also* Van Gogh in America, https://dia.org/events/exhibitions/van-gogh-america.) The exhibition marked the 100th anniversary of the DIA's acquisition of *Self-*

---

[1] Pursuant to Fed. R. App. P. 27(a)(3)(B), the DIA requests the affirmative relief set forth herein.

*Portrait* and included seventy-three other Van Gogh works assembled from around the world. (Shaw Decl. at ¶ 5, RE 12-2, Page ID # 69; *see also* Van Gogh in America, https://dia.org/events/exhibitions/van-gogh-america.)  *Van Gogh in America* is "the first show to tell the story of how US art lovers discovered Vincent's work in the early 20th century."[2]

The exhibition required approximately six years to prepare and included a combined eighty works of art from more than fifty lenders and the DIA's own collection.  (Shaw Decl. at ¶ 6, RE 12-2, Page ID # 69.)  "Borrowing Van Goghs is now a real challenge, but with 59 paintings, the Detroit exhibition will have the largest number of works in an American show for more than 20 years."[3]  These loans included the Painting, which was lent to the DIA by a foreign lender for the duration of the Exhibition.  (Shaw Decl. at ¶ 7, RE 12-2, Page ID # 69.)

## B.    The Immunity from Seizure Act.

"To assist and encourage cultural exchange" with other countries and residents thereof, in 1965 the United States Congress enacted the Immunity from

---

[2] Martin Bailey, *Van Gogh in America: Detroit's exhibition set to be a revelation*, Adventures with Van Gogh Blog, The Art Newspaper (Sept. 29, 2022), https://www.theartnewspaper.com/2022/09/30/van-gogh-in-america-detroits-exhibition-set-to-be-a-revelation.

[3] Bailey, *Van Gogh in America*, *supra*.  Though Bailey reported 59 paintings by Van Gogh, the exhibition includes 58 paintings and 16 works on paper by Van Gogh as well as 6 paintings by other artists.

Seizure Act.  (H.R. Rep. No. 1070, 89th Cong., RE 12-3, Page ID # 72.)  The act has one purpose: to "render ***immune from seizure*** under judicial process certain objects of cultural significance imported into the United States for temporary display or exhibition, and for other purposes."  (Public Law 89-259, RE 12-4, Page ID # 76.[4]) In "***rendering immune from seizure under judicial process***" certain loans of artwork and other objects, the act serves the important national interest of "contribut[ing] to the educational and cultural development of the people of the United States."  (H.R. Rep. No. 1070, 89th Cong., RE 12-3, Page ID # 72.)

The Immunity from Seizure Act provides in relevant part:

> Whenever any work of art or other object of cultural significance is imported into the United States from any foreign country, pursuant to an agreement entered into between the foreign owner or custodian thereof and the United States or one or more cultural, educational, or religious institutions with the capacity to appropriately curate such object within the United States providing for temporary storage, conservation, scientific research, exhibition, or display within the United States at any cultural exhibition, assembly, activity, or festival administered, operated, or sponsored, without profit, by any such cultural, educational, or religious institution with the capacity to appropriately curate such object, ***no court of the United States***, any State, the District of Columbia, or any territory or possession of the United States ***may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the***

---

[4] Emphasis added, citations and quotations removed throughout unless otherwise noted.

3

> ***United States, of custody or control of such object*** if before the importation of such object the President or his designee has determined that such object is of cultural significance and that temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest, and a notice to that effect has been published in the Federal Register.

22 U.S.C. § 2459(a).

In encouraging the adoption of the act, one sponsor cited a contemplated loan to a Virginia gallery from a museum located in and owned by the Soviet Union. (Rodney M. Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*, 6 Nw. J. Int'l L. & Bus. 1121, 1124 n. 21 (1984-1985), RE 12-5, Page ID # 83.)  The Soviet government had seized the art at issue from Soviet expatriates, and it insisted on immunity from seizure as a condition of loaning the art to the U.S. gallery.  (*Id*.)  In other words, the passing of the act specifically facilitated a contemplated exchange with the Soviet Union despite putting the loaned art beyond the reach of apparently valid ***claims to the artwork by United States citizens***.  (*Id.*)

The United States Department of State (the "State Department") administers grants of immunity under the Immunity from Seizure Act.  (*See* Immunity from Judicial Seizure Program, U.S. Dep't of State, https://www.state.gov/bureaus-offices/secretary-of-state/office-of-the-legal-adviser/office-of-public-diplomacy-and-public-affairs/ (last visited January 30, 2023).)  Museums seeking immunity from seizure apply for immunity through a process enumerated by the State

Department.  (*See* Application Procedure and Checklist (Revised April 2021), U.S. Dep't of State, https://www.state.gov/application-procedure-and-checklist-revised/ (last visited January 30, 2023).)  When immunity is granted, the State Department publishes its determination to the Federal Register.  (*Id.*)  This publication is determinative.  *See* 22 U.S.C. § 2459(a) (providing immunity if a determination of the object's "cultural significance" and its exhibition's being in the "national interest" has been made and published in the Federal Register); *see also Magness v. Russian Federation*, 84 F. Supp. 2d 1357, 1360 (S.D. Ala. 2000) ("In view of the fact that ***an agency's determination is entitled to deference***, this Court will not attempt to go behind that determination and, thus, put in jeopardy the Exhibition which was originally brought into this country in reliance on such a determination." (citing *McHenry v. Bond,* 668 F.2d 1185, 1190 (11th Cir. 1982)).

**C.**    **Immunity from Seizure Granted for the Painting.**

In securing loans from foreign lenders for the exhibition, on May 12, 2022, the DIA applied to the State Department for immunity for twenty-seven works of art.  (Cover Letter, RE 12-6, Page ID # 106.)  The application included a Schedule of Works Lent from Abroad with respect to which the DIA applied for immunity under the act.  (Schedule, RE 12-7, Page ID # 109.)  As part of the application, the State Department requires a certification with respect to each work of art:

> The applicant certifies that the importation of each object
> included in this application's schedule of objects will be

> pursuant to an agreement that a) is entered into between the foreign owner or custodian thereof and one or more cultural, educational, or religious institutions with the capacity to appropriately curate each such object within the United States, and b) provides for the temporary storage, conservation, scientific research, exhibition or display thereof within the United States, according to and consistent with the terms of 22 U.S.C. § 2459.

(*Supra* https://www.state.gov/application-procedure-and-checklist-revised/.)

The Painting is one of the works covered by the application.  (Schedule, RE 12-7, Page ID # 109.)  The State Department granted immunity with respect to the DIA's entire submission, including the Painting, on July 14, 2022, as confirmed by publication in the Federal Register:

**DEPARTMENT OF STATE**

[Public Notice: 11783]

**Notice of Determinations; Culturally Significant Objects Being Imported for Exhibition—Determinations: "Van Gogh in America" Exhibition**

SUMMARY: Notice is hereby given of the following determinations: I hereby determine that certain objects being imported from abroad pursuant to agreements with their foreign owners or custodians for temporary display in the exhibition "Van Gogh in America" at the Detroit Institute of Arts, Detroit, Michigan, and at possible additional exhibitions or venues yet to be determined, are of cultural significance, and, further, that their temporary exhibition or display within the United States as aforementioned is in the national interest. I have ordered that Public Notice of these determinations be published in the **Federal Register**.

(Federal Register Vol. 87, No. 134, Public Notice No. 11783, RE 12-8, Page ID # 117,  also  available  at  https://www.govinfo.gov/content/pkg/FR-2022-07-14/pdf/2022-15078.pdf).)  The  publication  on  the  Federal  Register  includes  a

determination that the objects at issue are "being imported from abroad pursuant to agreements with their foreign owners or custodians[.]"  (*Id.*)

Though the Federal Register does not include the list of objects covered, "Upon request by a member of the public, the Office will provide a list of the objects covered under a Federal Register notice.  The list generally provided is the schedule the Office received from the applicant."[5]  (*Supra* https://www.state.gov/application-procedure-and-checklist-revised/.)

## D.    The District Court's Summary Dismissal of Appellant's Suit.

On January 10, 2023, Appellant filed suit in the Eastern District of Michigan, alleging a single claim for "Replevin/Claim and Delivery."  (Complaint, RE 1, Page ID # 4.)

Appellant also moved, in contravention of the Immunity from Seizure Act, for a temporary restraining order and an order requiring the DIA to deliver the Painting to Appellant pending final judgment.  (Motion for TRO, RE 2.)  On January 11, 2023, the District Court granted the motion in part, issuing an Order Pending Hearing requiring that the DIA "refrain from damaging, destroying, concealing, disposing, moving, or using as to substantially impair [the] value" of the Painting.

---

[5] Appellant does not allege that it made any effort to request the list of art covered under the determination in the Federal Register despite its publication more than six months ago.

(Order Pending Hearing, RE 5, Page ID # 34.)  The District Court also set a prompt hearing on Appellant's request for possession.  (*Id.*)

The District Court heard oral argument on January 19, 2023 and issued its Opinion and Order Denying Plaintiff's Motion for Temporary Restraining Order and Possession Pending Final Judgment on January 20.  (Order, RE 15.)

In its Opinion and Order, the District Court determined that Appellant never possessed the Painting, despite purporting to have acquired it on May 3, 2017.  (*Id.*, Page ID # 139.)  The District Court noted that "Plaintiff does not allege any misconduct or wrongdoing by the DIA."  (*Id.*, Page ID # 140.)  And the District Court stated on the record its finding that "the DIA . . . is, of course, blameless in this case."  (Exhibit 1, Transcript 21:1.)

The District Court further found that the lender of the Painting is "a private collection" in Brazil and that, according to an agreement with that lender, the DIA applied to the State Department for immunity:

> In connection with loan agreements for twenty-seven of the works of art imported from foreign lenders, the DIA applied to the US State Department for immunity pursuant to the Immunity from Seizure Act.  The Painting was included in the DIA's application.

(Order, RE 15, Page ID # 140-141.)  Finally, the District Court found that the State Department considered and granted the DIA's application.  (*Id.*, Page ID # 140.)

8

The District Court denied Appellant's request for relief and summarily dismissed the case, finding the Immunity from Seizure Act barred the action.  In so holding, the District Court noted that "[t]he purpose of the Act is not to protect the owner of the object inasmuch as it is to encourage the exhibition in the United States of objects of cultural significance from abroad."  (*Id.*, Page ID # 145.)  It went on: "The method chosen to achieve the Act's purpose is to provide the institution with protection from seizure of such objects determined to be of cultural significance."  (*Id.*, Page ID # 146.)  The District Court expressly rejected Appellant's argument that the DIA must establish the lender's legal right to loan the object in order to establish immunity:

> Requiring an institution to ultimately bear the burden of proof in court that a foreign lender had a legal right to loan an object before it can assert that the object is immune from seizure ***would be circuitous, would not further the Act's stated purpose and would likely result in a chilling effect on cultural exchanges***.

(*Id.*)

Accordingly, the District Court held that the Act "prohibited" it "from issuing any order depriving [the DIA] of custody or control of the Painting."  (*Id.*, Page ID # 147.)  Further, because it found it could not grant the relief sought by Appellant— i.e., possession of the Painting—the District Court dismissed the lawsuit.

**E.**    **Appellant's Appeal and Request for Emergency Relief.**

Appellant filed its notice of appeal on January 24, 2023, four days after the District Court dissolved its injunction, and the next day—five days after the District Court's order and three days after the conclusion of the exhibition—Appellant filed with this Court an emergency motion for an injunction pending appeal. The Court entered an administrative stay requiring the DIA to retain possession of the Painting pending further order of the Court.

## III.    LEGAL STANDARD

Appellant erroneously sets forth the standard of review for ultimate review of the District Court's decision. (Motion, pp. 6-7.) For purposes of this Motion, the Court is not reviewing the Opinion and Order; instead, the Court is considering Appellant's request for an injunction pending appeal pursuant to Fed. R. App. P. 8(a) and the DIA's request for dismissal.

In considering a request for an injunction pending appeal, this Court considers "the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the

prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id.*

## IV.   ARGUMENT

The Immunity from Seizure Act prohibited the District Court from taking any action with respect to the Painting, and it prohibits with equal force this Court from entering an injunction requiring the DIA to retain possession of the Painting pending resolution of this appeal. The act prohibits any court in the United States from "issu[ing] or enforce[ing] any judicial process, or enter[ing] any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object." 22 U.S.C. § 2459(a). The Court should deny Appellant's Motion, dissolve the administrative stay, and summarily dismiss the appeal based solely on the grant of immunity under the Immunity from Seizure Act.

Appellant cannot establish any of the four factors required for injunctive relief pending appeal. Indeed, federal law expressly prohibits the relief sought. The Motion should be denied and the administrative stay dissolved.[6] Moreover, the

---

[6] The Motion fails procedurally, too. "A party must ordinarily move first in the district court" for an injunction pending appeal. Fed. R. App. P. 8(a)(1). A party may move in the court of appeals for an injunction if the movant "show[s] that moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A)(i). Appellant, in a footnote, claims that first moving in the District Court would be impracticable given the exhibition's conclusion. Appellant sat on its hands for more than two business days before seeking relief. Any impracticability is of

Court should dismiss the appeal for lack of jurisdiction.

## A.    Appellant Has No Likelihood of Success on the Merits.

Appellant will not succeed on the merits of this appeal because federal law absolutely bars the action and the relief sought.  A preliminary injunction cannot be issued "where there is simply no likelihood of success on the merits." *Southern Glazer's Dists. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017).  Injunctive relief that is inconsistent with well-established federal law is especially disfavored.  *See United States v. Contents of Accounts*, 629 F.3d 601, 607-09 (6th Cir. 2011).

Here, the Immunity from Seizure Act makes clear that Appellant cannot succeed on the merits of its appeal.  The act provides that:

> no court of the United States . . . ***may issue or enforce any judicial process, or enter any judgment, decree, or order***, for the purpose or having the effect of depriving [an] institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object.

22 U.S.C. § 2459(a).

As the District Court acknowledged, the President delegated the administration of the act to the Director of the United States Information Agency, an agency of the State Department.  (Order, RE 15, Page ID # 141, fn 1 ("The President

---

Appellant's own making, and the Court should deny the motion on this separate basis.

delegated this authority to the Director of the USIA by Executive Order 12047, 43 Fed.Reg. 13359 (1978), as amended by Executive Order 12388, 47 Fed.Reg. 46245 (1982).").)  The State Department, in turn, provides a detailed application checklist for museums like the DIA to follow.  *Supra* § II.C.  According to the Immunity from Seizure Act's plain text, upon a determination, published in the Federal Register, that such object is of cultural significance and the museum's "temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest," then immunity is provided under 22 U.S.C. § 2459(a).

    1.    <u>The State Department Determined the Statute Applies.</u>

The Immunity from Seizure Act clearly provides immunity here:

- The DIA applied to the State Department for immunity on May 12, 2022.  (Shaw Decl. at ¶ 7, 12-2, Page ID #69); (Cover Letter, RE 12-6, Page ID # 106.)

- The application for immunity included the Painting.  (Shaw Decl. at ¶ 8, RE 12-2, Page ID # 69); (Schedule, RE 12-7, Page ID # 109.)

- The application for immunity certified that the Painting was being imported "***pursuant to an agreement ... between the foreign owner or custodian thereof***." (Cover Letter, RE 12-6, Page ID # 106.)

- The State Department published in the Federal Register on July 14, 2022 its determination that the Painting and the other covered works:

  o Were to be imported from abroad pursuant to agreements with their foreign owners or custodians.  (RE 12-8, Page ID # 117.)

  o Were of cultural significance and their display was in the national interest, affording immunity under the Immunity from Seizure Act.  (*Id*.)

By publishing its determination in the Federal Register, the State Department ensured immunity for the DIA with respect to the Painting (and the other borrowed works) from any order by any court in the United States that would impact the DIA's custody or control over the art.  *See* 22 U.S.C. § 2459(a).  This ends the inquiry.

    2.    <u>The State Department's Determination Must be Given Deference.</u>

Appellant concedes that, so long as the DIA borrowed the Painting "pursuant to an agreement entered into with the foreign owner or custodian thereof," the Immunity from Seizure Act applies.  (Motion, Page 21.)  But Appellant, without citation, asserts that the statute does not apply because the District Court, not the State Department, must make certain threshold inquiries as to the act's application.

This interpretation is wrong on the face of the statute, which clearly provides for immunity if the State Department makes and publishes its determination on the Federal Register.  22 U.S.C. § 2459(a).  The statute does not reserve any of the predicate questions for the courts.

The interpretation is also contradicted by case law.  In *Magness v. Russian Federation*, 84 F. Supp. 2d 1357 (S.D. Ala. 2000), the plaintiff asked the court to set aside the State Department's threshold finding that the exhibit at issue was not for profit, one of the prerequisites under the act.  The court rejected this argument, ruling:

14

> In view of the fact that **an agency's determination is
> entitled to deference**, *see McHenry v. Bond,* 668 F.2d
> 1185, 1190 (11th Cir. 1982), this Court will not attempt to
> go behind that determination and, thus, put in jeopardy the
> Exhibition which was originally brought into this country
> in reliance on such a determination.

*Id*. at 1360.  The court refused to revisit the State Department's determination and

rejected the request for an order seizing the art at issue.

Here, the same deference should apply.  The District Court was required to

defer to the agency's determination that the Painting qualified for immunity, and this

Court must defer as well.  The State Department determination is dispositive, and

immunity applies.

3.   Appellant Grossly Misconstrues the Legislative Intent and, as a
     Result, the Scope of the Immunity from Seizure Act.

Appellant seems to argue that the Immunity from Seizure Act only applies to

suits brought by creditors or others without a putative claim of ownership of the art

at issue.  (Motion, Pages 18-19.)  This argument is wrong for several reasons.

First, there is no support for this argument on the face of the statute.  The

statute prohibits the issuance or enforcement of "any judicial process" or the entry

of "any judgment, decree, or order" that interferes with the custody or control of a

museum over the art in question.  22 U.S.C. § 2459(a).  Congress did not limit the

act's applicability to only suits brought by creditors or only actions in which

ownership is not disputed.  This Court should not read those words into the statute.

15

*See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

Second, Appellant's interpretation would undercut the legislative intent. Contrary to Appellant's assertions, the act does not protect "owners" of art. It in fact does the opposite: it promotes cultural exchange, even at the expense of purported owners. *See supra* § II.B.

Third, Appellant's interpretation contradicts case law. In *Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298 (D.D.C. 2005), the owners of certain art filed suit against the lending foreign government. Though the suit ultimately hinged on issues of sovereign immunity, the court in dicta outlined the broad scope of the Immunity from Seizure Act, including its application to suits by claimed owners against museums:

> A litigant with a claim against a foreign sovereign may not seize that sovereign's property that is in this country on a cultural exchange and ***the litigant may not serve the receiving museum with judicial process to interfere in any way with the physical custody or control of the artworks***. The Malewicz Heirs have tried to do neither. They have sued the City of Amsterdam, not the Guggenheim or the Menil Collection. Had this lawsuit begun and concluded before the Malewicz Collection left this country, no order of this Court would have, or could have, affected the custody or control that the museums (and carriers) exercised over the artworks. ***The Immunity from Seizure Act deprives all U.S. courts from taking any action to obtain physical custody of the Malewicz Collection or other cultural icons granted immunity while in this country***.

*Id.* at 311.[7]

Appellant asks this Court to read into the Immunity from Seizure Act a limitation that not only does not exist but would fundamentally undercut the purpose of the act.  This Court should decline to do so.

## B.   An Injunction Would Not Cause Irreparable Harm to Appellant.

Any claims of Appellant regarding the Painting can be adjudicated in a dispute between interested parties in a court with jurisdiction over such matters.  That is not this Court, and these are not those parties.[8]

Throughout, Appellant seeks to frame its "harm" around the claim that it is the undisputed owner of the Painting.  In doing so, it relies on rhetorical flourishes— words like "thief" or "stolen"—that lack record support.  The DIA's lender voluntarily sent the Painting to a foreign country for display at a public museum,

---

[7] Congress's response to *Malewicz* is illuminating.  The court ruled that the City of Amsterdam was subject to suit in the United States because the loaning of art covered by the Immunity from Seizure Act constituted "commercial activity," triggering an exception to foreign sovereign immunity.  *Id.* at 314-15.  Congress **amended** the Foreign Sovereign Immunities Act to provide that participation in cultural exchange pursuant to the Immunity from Seizure Act does not qualify as commercial activity subjecting the foreign sovereign to suit.  28 U.S.C. § 1605(h); *see also Federal Republic of Germany v. Philpp*, 141 S.Ct. 703, 714-15 (2021) (explaining superseding of *Malewicz* by statute).  In other words, Congress removed from the jurisdiction of U.S. Courts **yet another** category of suit involving foreign art on loan to museums in the United States.

[8] Both the lender of the Painting and Appellant's sole owner are from Brazil.  Any dispute of ownership would likely be determined under Brazilian law, and thus suitable for a Brazilian court to adjudicate.

acts one would not expect of a thief.  But this issue was not before the District Court and is not before this Court, because the District Court dismissed the case on jurisdictional grounds and the lender of the Painting is not a party to this case.

Moreover, the glaring factual deficiencies in Appellant's version of events raise doubts as to Appellant's "harm."  Appellant claims—without factual support—that after purchasing the Painting, it allowed a third party to take possession of it.  No explanation was offered as to why, to whom, or under what conditions the Painting was delivered to a third party.  Plaintiff claims it lost track of the Painting, a famous Van Gogh!  While this may be so (again, it is not a question for the Court) the DIA notes that, prior to submitting its application for immunity, it received confirmation from the Art Loss Register, the world's largest database of stolen art, that the Painting was not registered as stolen or missing.  (Shaw Decl., RE 12-2, Page ID # 69.)  The DIA also has confirmed that the Painting has not been listed on the FBI's National Stolen Art File.  (*See* Search "van gogh," National Stolen Art File,    [https://www.fbi.gov/investigate/violent-crime/art-theft/national-stolen-art-file?q=van+gogh&Subject=](https://www.fbi.gov/investigate/violent-crime/art-theft/national-stolen-art-file?q=van+gogh&Subject=) (last visited January 30, 2023).)

In any event, the Court need not resolve this issue.  Where there is no likelihood of success on the merits, an injunction cannot issue, whether there is irreparable harm or not.  *See S. Glazer's Distributors of Ohio*, 860 F.3d at 854 (reversing injunction, despite finding of irreparable harm, because plaintiff had no

likelihood of success); *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]").

**C.    An Injunction Would Cause Substantial Harm to the DIA, to Other U.S. Art Museums, and to International Cultural Exchanges.**

The DIA, other U.S. cultural institutions and society in general would suffer substantial harm if the Court were to require the DIA to maintain possession of the Painting pending appeal.

Like its peer art museums, the DIA relies on loans from collectors, galleries, and museums around the world to provide the visiting public with meaningful cultural and educational experiences.  (Shaw Decl. at ¶ 10, RE 12-2, Page ID # 69.) These exchanges benefit society immeasurably.  The resurrection of this lawsuit would threaten the ability of U.S. art museums to assemble world-renowned exhibitions, such as *Van Gogh in America*, likely chilling the willingness of foreign lenders to lend art to U.S. institutions.  As the District Court found, "the DIA is blameless" here, yet Appellant seeks to drag the DIA through prolonged litigation that is expressly barred by statute.  Congress enacted the Immunity from Seizure Act precisely to avoid this substantial risk to the DIA and other U.S. art museums.

**D.    The Public Interest Would Not Be Served by Issuing an Injunction.**

Congress enacted the Immunity from Seizure Act for the very purpose of promoting the public interest (not private actors, contrary to Appellant's assertions,

as discussed above). In considering the act, the Justice Department noted to Congress "the commendable objective of this legislation is to encourage the exhibition in the United States of objects of cultural significance which, ***in the absence of assurances such as are contained in the legislation***, would not be made available." (RE 12-9, Page ID # 119.[9]) In "***rendering immune from seizure under judicial process***" certain loans of artwork and other objects ***the act serves the important national interest*** of "contribut[ing] to the educational and cultural development of the people of the United States." (RE 12-3, Page ID # 73.) The existence and enforcement of the Immunity from Seizure Act protects the public interest and requires the denial of Appellant's Motion.

**E.     <u>The Administrative Stay Must Be Immediately Dissolved.</u>[10]**

Upon receipt of Appellant's Motion, this Court issued "an administrative stay of the district court's order" and ordered the DIA to "retain possession of the painting pending further order of this court." This order must promptly be dissolved.

As set forth fully above, the Immunity from Seizure Act provides that "***no court*** of the United States . . . may issue or enforce ***any judicial process***, or enter ***any judgment, decree, or order***, for the purpose or having the effect of depriving

---

[9] For a further discussion of the legislative history, *see supra*, Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*.

[10] The DIA makes the affirmative requests for relief in sections IV.E and IV.F pursuant to Fed. R. App. P. 27(a)(3)(B).

such institution . . . of custody or control of such object." 22 U.S.C. § 2459(a). The administrative stay is an order that violates the Act.

**F.    The Appeal Must Be Dismissed.**

Finally, this Court should dismiss the appeal for lack of jurisdiction. For all the reasons set forth above, application of the Immunity from Seizure Act allows only one outcome: this Court cannot take any action interfering with the DIA's custody or control of the Painting. As Appellant's sole claim is for possession of the Painting, there is no justiciable controversy that this or any other court in the United States can adjudicate. In other words, the Court does not have jurisdiction and must dismiss this appeal.

## V.    CONCLUSION

The State Department granted immunity to the Painting under the Immunity from Seizure Act. Appellant's lawsuit and this appeal threaten to undermine federal law and create uncertainty for the DIA and other museums that rely on the Act to promote cultural exchange that serve the national interest.

The Immunity from Seizure Act requires denial of Appellant's Motion, immediate dissolution of the administrative stay and dismissal of this suit.

Respectfully submitted,

Dated: January 30, 2023

By: /s/ *Andrew M. Pauwels*
J. Michael Huget (P39150)
Andrew M. Pauwels (P79167)
Jonathan N. Ajlouny (P82030)
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
apauwels@honigman.com
jajlouny@honigman.com

*Attorneys for Defendant-Appellee Detroit Institute of Arts*

# <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 5079 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in the proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

Respectfully submitted,

Dated: January 30, 2023

By: */s/ Andrew M. Pauwels*
J. Michael Huget (P39150)
Andrew M. Pauwels (P79167)
Jonathan N. Ajlouny (P82030)
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
apauwels@honigman.com
jajlouny@honigman.com
*Attorneys for Defendant-Appellee Detroit Institute of Arts*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 30, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record via the ECF system.

Respectfully submitted,

Dated: January 30, 2023

By: */s/ Andrew M. Pauwels*
J. Michael Huget (P39150)
Andrew M. Pauwels (P79167)
Jonathan N. Ajlouny (P82030)
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
apauwels@honigman.com
jajlouny@honigman.com
*Attorneys for Defendant-Appellee Detroit Institute of Arts*

## DESIGNATION OF LOWER-COURT DOCUMENTS

| RE. | Description | Page ID # |
|-----|-------------|-----------|
| 1 | Complaint | 1-10 |
| 2 | Motion for TRO | 11-28 |
| 5 | Order Pending Hearing | 33-34 |
| 12-2 | Shaw Decl. | 68-70 |
| 12-3 | H.R. Rep. No. 1070, 89th Cong. | 72-74 |
| 12-4 | Public Law 89-259 | 76-77 |
| 12-5 | Rodney M. Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*, 6 Nw. J. Int'l L. & Bus. 1121, 1124 n. 21 (1984-1985) | 79-104 |
| 12-6 | Cover Letter | 106-107 |
| 12-7 | Schedule | 109-115 |
| 12-8 | Federal Register Vol. 87, No. 134, Public Notice No. 11783 | 117 |
| 15 | Order | 138-148 |