# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BROKERARTE CAPITAL PARTNERS, LLC,**

          Plaintiff,

    v.

**DETROIT INSTITUTE OF ARTS,**

          Defendant.

_____/

**HONORABLE GEORGE CARAM STEEH**

**No. 23-10066**

**HEARING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND POSSESSION PENDING FINAL JUDGMENT
Thursday, January 19, 2023**

Appearances:

Aaron M. Phelps
Neil Youngdahl
Varnum LLP
P.O. Box 352
Grand Rapids, MI  49501
616.336.6000
amphelps@varnumlaw.com
  On behalf of Plaintiff

Andrew Pauwels, Michael Huget
Jonathan Ajlouny
Honigman, Miller
660 Woodward Avenue, #2290
Detroit, Michigan  48226-3583
(313) 465-7000
apauwels@honigman.com
  On behalf of Defendant

-  -  -

*To obtain a certified transcript, contact:*
*Timothy M. Floury, CSR-5780*
*Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard*
*Detroit, Michigan  48226*
*(313)234-2607 · floury@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

**I N D E X**

Motion Hearing                                              Page

Argument by Mr. Phelps  .........................4

Argument by Mr. Pauwels  .......................12

Argument by Mr. Phelps  ........................17

Matter taken under advisement by the Court  ....21

Certification of Reporter .......................22

-   -   -

**E X H I B I T S**

| Number | Description | Id'd | Rcvd | Vol. |
|--------|-------------|------|------|------|

***None Marked, Offered or Received***

-   -   -

*23-10066; Brokerarte v. Detroit Institute of Arts*

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*
*Page 3*

1          Detroit, Michigan

2         Thursday, January 19, 2023

3          10:45 a.m.

4          -   -   -

5   **THE CLERK:**  Please rise.

6    The United States District Court for the Eastern

7 District of Michigan is now in session.  The Honorable George

8 Caram Steeh presiding.

9    You may be seated.

10    Court calls Case No. 23-10066, Brokerarte Capital

11 Partners versus Detroit Institute of Arts.

12    Will counsel please place their appearances on the

13 record?

14   **MR. PHELPS:**  Aaron Phelps, Varnum LLP, on behalf of

15 the plaintiff.  Also with me is Neil Youngdahl.

16   **MR. PAUWELS:**  Morning, your Honor.  Andrew Pauwels of

17 Honigman LLP, on behalf of the Detroit Institute of Arts.  I'm

18 joined by my partner Mike Huget and our colleague Jonathan

19 Ajlouny.

20   **THE COURT:**  The Court is here on the motion filed in

21 support of the plaintiff's motion for the temporary restraining

22 order and possession pending final judgment.  Court has had the

23 opportunity to meet with counsel in chambers for a discussion

24 of potential ways of resolving the dispute between the parties,

25 and we appear to have gained some information for the

*23-10066; Brokerarte v. Detroit Institute of Arts*

1   plaintiff's benefit, and -- and some potential pathways for

2   resolving the case, I think, became apparent during the course

3   of our discussion.

4          The Court is going to proceed, however, with the oral

5   argument in this case, and we'll begin first with the

6   plaintiff.

7          **MR. PHELPS:**  Thank you, your Honor, and may it please

8   the Court.

9          Your Honor, as we see it, there are two issues for

10  hearing today:  One is who owns Van Gogh's 1888 work, "The

11  Novel Reader," and does this court have jurisdiction to do

12  anything about returning it to its owner.  We think the answer

13  for the first question is clearly the plaintiff, and, yes, of

14  course, this Court has jurisdiction to return property to its

15  lawful owner.

16         Your Honor, when we filed our compliant, we alleged

17  several important operative facts:  That plaintiff purchased

18  "The Novel Reader" in 2017, that he purchased it from Torralba

19  Holdings, that plaintiff paid $3.7 million for the work, the

20  transaction was consummated pursuant to a written bill of sale,

21  which has been submitted for the Court, and on that day, May 3,

22  2017, plaintiff became the title owner of that painting.  Those

23  facts have not been challenged by anyone in this court or

24  outside.  Literally, no documentation, no testimony, nothing

25  has been submitted in this proceeding challenging those facts

*23-10066; Brokerarte v. Detroit Institute of Arts*

1  that plaintiff did, in fact, buy the painting as set forth in

2  the complaint.

3       So what happened after that?  The painting was in

4  Brazil and was supposed to be stored in Brazil.  To plaintiff's

5  knowledge, it was, in fact, stored in Brazil.  Plaintiff

6  intended to eventually sell the paint, but at no date certain.

7  So time went by.  The painting was believed to be in storage

8  safe in Brazil, and plaintiff had occasional communication with

9  the third party that held the painting until around the 2019,

10  2020 time frame.  At that time plaintiff no longer had any

11  connection, any communication with that party.  Don't know what

12  happened, didn't talk to him, didn't have any communication of

13  any kind, and became concerned as the more time went by that

14  something wasn't right.  He didn't expect to be in regular

15  contact, but when a year goes by and he can't get ahold of

16  them, my client became suspicious that something was wrong.

17  Didn't have any actual knowledge or any actual facts that

18  anything untoward had happened, but he was concerned as -- that

19  something wasn't right.

20       The work, itself, being highly valuable and highly

21  recognizable, he assumed that at some point it would surface

22  again, and, in fact, it did.  It is now presently at the

23  Detroit Institute of Arts as part of the Van Gogh in America

24  exhibition.

25       Now knowing where the painting is, having no contact

1   with the person who had possession and storage of the work, my

2   client would like to get it back before it disappears again.

3          As to issue one, before the Court is a simple

4   question of whether the plaintiff's claim for the work is

5   probably valid.  We're here on a preliminary hearing; this is

6   not a final ruling of the Court.  The Court is looking at the

7   evidence that's been submitted and making a determination of

8   whether that ownership interest is probably valid.  As I said,

9   we've already submitted an uncontested prima facie case of

10  ownership.

11         I'll add to that that on the record before the Court,

12  the DIA has refused to identify where, from whom they received

13  the painting.  Presumably there is a loan agreement.  The DIA

14  has not brought that forward.  It has not been provided to me

15  outside this Court, and it has not been submitted to the Court.

16  So as a matter of record, we don't know, the Court does not

17  know who actually lent the painting to the DIA.

18         The DIA's affidavit does not even generally assert

19  that there was an agreement between it and a foreign owner or

20  custodian.  The only thing the affidavit says is that the

21  painting was lent to it.  I'm sure it was lent to it.  The

22  question is lent by whom?  And it's not -- there's been no

23  documentation provided and there's been no testimony by way of

24  affidavit provided by the DIA.

25         I disclosed to the Court that just yesterday I

       *23-10066; Brokerarte v. Detroit Institute of Arts*

1  received a call from lawyers based in New York asserting that

2  they represent who they describe as the, quote, ultimate

3  beneficiary owners of the painting.  I asked them to provide

4  the loan agreement.  They declined.  I asked them to provide

5  proof of ownership.  They declined.  They obviously have not

6  appeared in this case.  I don't know what the problem is.  I

7  don't know why the secrecy.  I don't know why basic information

8  isn't being provided in a case where the ownership of a

9  valuable work of art is apparently being contested.  We have

10  brought forth our evidence.  We've given all sides time to

11  comply with the Court's order and appear at this hearing and

12  submit information, and the approach taken by DIA and,

13  apparently, these other nonparties, but interested persons in

14  the case, is to simply ignore it, to submit no information to

15  either counsel for plaintiff or the Court from which any

16  further examination of ownership could be determined.

17       So on this record, there's no question but what we

18  have met our burden of establishing a probably valid claim of

19  ownership, which we acknowledge.  The Court can revisit at a

20  later date, but at this stage, that's all that's before the

21  Court.

22       Your Honor, as to issue two, jurisdiction:  Since day

23  one, the DIA has dogmatically asserted that it is beyond the

24  reach of this Court because of the Immunity from Seizure Act.

25  Your Honor, the Act is short, it's Section 2459, and it has

*23-10066; Brokerarte v. Detroit Institute of Arts*

1  limited scope.  There are nine requirements that must be met

2  for immunity to apply, and the predicate, before you even get

3  into all of the elements, is that the work of art be imported

4  into this country pursuant to an agreement between, quote, the

5  foreign owner or custodian thereof.  The sentence begins -- the

6  statute begins, "whenever" -- so it identifies a certain period

7  of time -- "Whenever any work of art is imported into the

8  United States from any foreign country pursuant to an agreement

9  entered into between the foreign owner or custodian thereof,

10 and the cultural institution.  No Court in the United States

11 shall issue or enforce judicial process," et cetera.  So the

12 predicate to the statute is that there is a foreign owner or

13 custodian who has entered into an agreement to import the work,

14 which makes complete sense because the whole point of the

15 statute is to encourage importation of work to encourage owners

16 of property, interesting culturally significant property,

17 artwork, we want to encourage them to bring it to the

18 United States without fear that a creditor would attempt to

19 attach and take that work of art.  That is the scenario this

20 statute is designed to address.  It is obviously not designed

21 to protect stolen art.  It is not designed to protect a thief

22 who has art.  It is not designed to protect someone who has no

23 right to possess the art.  Such a person is not a foreign owner

24 or custodian and cannot make an agreement to enter the -- to

25 bring the work into the United States.  And, indeed, the

*23-10066; Brokerarte v. Detroit Institute of Arts*

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 9*

1  obvious purpose of the statute is to protect the owner, and as

2  applied -- attempted to be applied by the DIA, it would do

3  exactly the opposite.  They want to use the statute to deprive

4  the owner of its own property.  That is not the purpose of

5  statute.  That's why it requires an agreement between the

6  foreign owner or custodian.  Which also drives over the earlier

7  point I made, which is the DIA has not produced the loan

8  agreement.

9          It is particularly curious that the predicate to the

10  immunity statute they rely on is an agreement, but they won't

11  share the agreement with us or the Court, so I don't know how

12  they could possibly even begin to establish its applicability

13  without some basic factual showing.

14          Also relative to jurisdiction, in the DIA's brief,

15  they erroneously assert that, quote, the State Department

16  granted immunity.  Your Honor, that has literally never

17  happened.  The statute does not delegate any role to the State

18  Department relative to granting immunity.  They don't grant

19  immunity.  They don't issue a permit.  They have a limited role

20  under the statute, which plainly says that they are to make a

21  determination as to whether the object that is the subject of

22  the agreement is culturally significant and whether it's

23  exposition in the United States would be in the national

24  interest.  So those are two elements of the statute that are

25  delegated by Congress to, in this case, the State Department,

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 10*

1  and the State Department reviews the submission by the DIA.

2  They determine, I think an easy call in this case, that this

3  painting is culturally significant and having it exhibited in

4  the United States would be of national interest.  They then

5  published only that, that determination.  It's on page 6 of the

6  response brief filed by the DIA.  It's called "Notice of

7  determinations."  It's not called "Grant of immunity."  Nowhere

8  in that notice does it say "immunity," because the State

9  Department doesn't grant immunity.  The State Department makes

10  these fact-based determinations of cultural significance and

11  national interest.  If it agrees that this is the kind of

12  object that ought to be brought for exhibition in the

13  United States, it makes that determination, it publishes it in

14  the Federal Register and those two requirements are met, which

15  are uncontested.  The State Department does nothing else.  It

16  doesn't pass on ownership.  It doesn't gather -- do an

17  investigation to see who really owns whatever the object is,

18  and it doesn't purport to do that and it's not its role under

19  the statute.

20       And I'll tell you who agrees with me, is the DIA,

21  before they are in litigation, because notwithstanding what

22  they say in their brief, Exhibit E to the DIA's brief is the

23  letter, May 12, 2022, that DIA sent to the State Department.

24  The third paragraph -- and this is from the DIA -- "I

25  understand that in any judicial proceedings involving these

*Hearing on Plaintiff's Motion for Temporary Restraining Order
and Possession Pending Final Judgment
Thursday, January 19, 2023*

Page 11

1  works of art, if a United States court finds the above

2  determinations have been made," referring to the culturally

3  significant and national interest determinations, "timely

4  publication has occurred and that the other provisions of 22

5  U.S.C. 2459 have been met, the court -- the court could grant

6  immunity from judicial seizure of the work or works of art."

7        So I agree with the letter from the DIA.  I think

8  that accurately states the statute as they understood it in May

9  of 2022, and as I understand it today, that there are -- the

10 State Department weighs in on cultural significance and

11 national interest.  There are other provisions of the statute

12 that obviously must be met, and that ultimately it is the

13 Court, not the State Department, that makes the determination

14 of whether a grant of immunity should be given and, of course,

15 we'd ask the Court to do that on a full factual record.

16       So, your Honor, for those reasons and on this record,

17 we believe our motion should be granted.

18       Reflecting on our in-chambers discussion, I'll put on

19 the record that, again, we seek to move this forward, and if

20 the DIA will not voluntarily provide the information, we ask

21 the Court to order that the lender agreement, any related

22 documents to that, be produced to us so we can examine those,

23 and having found out just yesterday who the alleged ultimate

24 beneficiary owners are, I expect there will be more -- more to

25 come on their involvement in proceedings to resolve this.

*23-10066; Brokerarte v. Detroit Institute of Arts*

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 12*

1    So at this point there's no reason and, in fact,

2   there's every reason to continue the preliminary -- temporary

3   restraining order, preliminary injunction, having the DIA hold

4   the painting until further information is available.

5          **THE COURT:**  All right.  Thank you, Mr. Phelps.

6          Mr. Pauwels?

7          **MR. PAUWELS:**  Good morning, again, your Honor.

8   Andrew Pauwels on behalf of the DIA.

9          Plaintiff's motion hinges on the application and

10  interpretation of the Immunity from Seisure Act.  Relevant to

11  the Act, the dispositive facts cannot be disputed.  One, on

12  May 12th, 2022, the DIA applied to the State Department under

13  the Act for works of art on loan from foreign lenders to be

14  displayed as part of its Van Gogh in America expedition; two,

15  the application included the painting; three, on July 14th,

16  2022, the State Department granted that application and

17  published its determination under the Act that the art,

18  including the painting, was of cultural significance and its

19  exhibition in the national interest.  Under the Act, this ends

20  the inquiry, and no court in the United States, quote, may

21  issue or enforce any judicial process or enter any judgment

22  decree or order for the purpose of having the effect of

23  depriving the DIA of custody or control of the painting.

24          Plaintiff asks this Court to overrule the State

25  Department's determination, ignore the plain text of the

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 13*

1    statute and seize the art from the museum in direct

2    contravention of the Act.  Those arguments are misplaced.

3              First, regarding the role of the State Department.

4    Plaintiff asserts that the statute does not delegate certain

5    threshold inquiries under the Act to the State Department.

6    While this is wrong on the face of the statute, it has also

7    been expressly rejected in one of the cases relied on by the

8    plaintiff, that is Magnus v Russia Federation, 84 F. Supp. 2nd,

9    1357.  And this is from the Southern District of Alabama.

10             There, the plaintiff asked the Court to set aside the

11   State Department's threshold finding that the exhibit at issue

12   was not for profit.  That's one of the elements of the statute

13   that plaintiff says -- plaintiff here says the State Department

14   doesn't have a right to rule on, much like they claim the loan

15   agreement isn't something the State Department can rule on.

16   The Court there rejected this arrangement saying, quote, in

17   view of the fact that an agency determination is entitled to

18   deference, citing an 11th Circuit case, this court will not

19   attempt to go behind that determination and thus put in

20   jeopardy the exhibition which was originally brought into this

21   country in reliance on such a determination.  In effect, the

22   plaintiffs are asking this Court to ex post facto overrule the

23   State Department's June 4th, 1998, notice of determination.

24   The Court declined to do that and found that the act that the

25   plaintiff sought to take in seizing items were immune from

*Hearing on Plaintiff's Motion for Temporary Restraining Order
and Possession Pending Final Judgment
Thursday, January 19, 2023*

*Page 14*

1    execution and violated the Act.

2            The same facts are at issue here.  The plaintiff

3    asked the Court to revisit a determination of the State

4    Department; it should not.

5            Plaintiff next asserts that because it claims

6    ownership, the statute cannot apply.  In doing so, the

7    plaintiff asks the Court to omit language from the statute

8    related to the custodian of the work being able to loan to

9    institutions in the United States.  There can be no dispute

10   that the work is on loan, literally, from its custodian.  The

11   party with custody of the painting provided it to the DIA for

12   exhibition.  Plaintiff asks the Court to either, one, read out

13   the term "custodian" all together, or, two, add a requirement

14   that the statute only applies to custodians where an American

15   court has determined legal title or something to that effect.

16   But those are the types of foreign property law issues that the

17   statute deliberately removed from the Court to avoid these

18   types of litigations where cultural exchange has been

19   determined to be of great national importance.

20           Moreover, despite new testimony apparently offered by

21   counsel and not supported by facts in the record regarding

22   plaintiff's efforts to recover the painting over the last five

23   years, in its pleading, plaintiff asked the Court to simply

24   assume it is the proper owner based on a single document,

25   despite, apparently, never having reported the art as stolen,

*Hearing on Plaintiff's Motion for Temporary Restraining Order
and Possession Pending Final Judgment
Thursday, January 19, 2023*

*Page 15*

1  never having pursued the third party to which it admittedly

2  gave the painting almost six years ago with any sort of civil

3  recourse.  It did not report the art lost or stolen on Art Loss

4  Register or lost or stollen with the FBI.  It did not contact

5  the State Department when its determination was made in July of

6  this year.  Despite the Federal Register expressly stating, if

7  you have questions regarding this determination, contact this

8  email address and phone number, and the State Department's

9  application process on its website stating, we will disclose

10  the list of arts to interested members of the public if they

11  contact us.  Plaintiff does not claim to have taken any of

12  those acts, nor does it explain in its reply why it didn't do

13  anything for the last five years to try to recover this

14  painting that it claims to own.  For purposes of the Act and

15  for the DIA's submissions to the State Department, the

16  custodian loaned it to the DIA and the immunity under the

17  statute should be granted.

18          Finally, the plaintiff asks the court to narrowly

19  interpret the statute to only apply to suits by third parties

20  seeking to seize art from, quote, owners.  Again, this omits

21  the custodians from the equation, as I mentioned earlier, but

22  it also ignores the plain text of the statute which prohibits

23  any judicial process or order.  The statute could have said,

24  prohibits judicial process or order brought in suits by third

25  parties or by parties seeking to enforce judgment claims but

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 16*

1  without an ownership interest.  Congress did not do that.  It

2  used the broad term "any" on multiple occasions.

3          And this has also been rejected by case law.  And

4  this is the Malewicz v City of Amsterdam case, 362 F. Supp. 2nd

5  298 from the District of the District of Columbia, and we did

6  not cite this in our briefing because it's complicated

7  factually and procedurally, and the ultimate legal issue

8  relates to the Foreign Sovereign Immunities Act, not the

9  Immunity from Seizure Act.  But important dicta on page 311,

10  the Court notes the following:  And for context, I'll point out

11  that the lawsuit was a suit by owners of the art, just like the

12  plaintiff claims to be here.  They are in that case against a

13  foreign Government.  On page 311, the Court made clear how

14  broadly the Immunity from Seizure Act applied two suits brought

15  against the art when held by the museum itself, saying, quote,

16  a litigant with a claim against a foreign sovereign, may not

17  seize that sovereign's property that is in this country on a

18  cultural exchange, and the litigant may not serve the receiving

19  museum with judicial process to interfere in any way with the

20  physical custody or control of the artworks.  The Malewicz

21  heirs, the plaintiffs there, the claimed owners, have tried to

22  do neither.  They have sued the City of Amsterdam, not the

23  Guggenheim or the Meynell collection.  Had this lawsuit begun

24  and concluded before the Malewicz collection left this country,

25  no order of this Court would have or could have affected the

*Hearing on Plaintiff's Motion for Temporary Restraining Order
and Possession Pending Final Judgment
Thursday, January 19, 2023*

*Page 17*

1  custody or control that the museums and carriers exercised over

2  the artworks.  The Immunity from Seizure Act deprives all U.S.

3  courts from taking any action to obtain physical custody of the

4  Malewicz collection or other cultural icons granted immunity

5  while in this country.

6          Plaintiff asks this Court to set aside the State

7  Department's determination, ignore the plain text of the

8  statute, the legislative intent, which we fully briefed, and

9  the limited, admittedly, case law on this issue.  The Court

10  shouldn't do so.  The DIA respectfully asks that you dissolve

11  your order pending hearing, deny plaintiff's request for

12  possession and dismiss the case.

13          Thank you, your Honor.

14          **THE COURT:**  Okay.  Thank you.

15          Rebuttal?

16          **MR. PHELPS:**  Your Honor, relative to the statute,

17  three quick points:  This issue about the State Department is

18  squarely resolved by simply reading the statute where it goes

19  through its laundry list of requirements and at the end it

20  says, if, before the importation of such object, the president

21  or his designee has determined that such object is of cultural

22  significance and that temporary storage conservation,

23  et cetera, is in the national interest, and a notice to that

24  effect has been published in the Federal Registry.  That's it.

25  That is -- clearly states that the role of the State Department

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 18*

1   is to pass on those two criteria, significance to national

2   interest, and the notice of those two things is what's to be

3   published in the Federal Register.  And that's exactly what

4   happens.  The Federal Register says that it's a notice of those

5   determinations, it says that those are found to exist, and that

6   is what is published.

7          No. 2, the way it sounds, you'd think that this

8   Federal Register identifies this painting.  It does not.

9   There's many Van Gogh works.  There's nothing in the Federal

10  Register that says this particular work is deemed to be

11  culturally significant.  No one would know by reading this what

12  it's referring to.  If you did read it and you knew it was

13  referring to that, all you would know is that it's culturally

14  significant and its exhibition is in the national interest,

15  which aren't even disputed to begin with.

16         Finally, you know, counsel asserts we're ignoring

17  words in the statute when we have done no such thing.  Our

18  brief repeatedly cites to the phrase foreign owner or

19  custodian.  Yes, those are both in there, foreign owner or

20  custodian.  It doesn't say foreign owner, custodian or thief,

21  or someone else, or a person with no right to possession.  You

22  can be an owner.  You could be a custodian.  A custodian

23  necessarily implies a legal right to actually possess the

24  property.  I don't think anybody would consider someone who

25  steals property to be a custodian of that property.  That's

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 19*

1  their interpretation as well.  If you have custody, if you have

2  possession, ergo you're a custodian under law.  It's frankly

3  just absurd.  It says owner or custodian.  If they meant -- if

4  custodian was meant to mean anybody with the property, they

5  wouldn't need to say owner.  They've identified two types of

6  persons who might possess property:  You might be the owner or

7  you might be someone in lawful possession.  A custodian could

8  be like a museum that perhaps doesn't own the work but has

9  legal custody of the work.  Could be a lessee of property would

10  be a potential custodian.  Someone who takes work without

11  permission, someone who steals work, someone whose right to

12  possess that property has been retracted by the owner, somebody

13  in that category, obviously, is not a legal custodian of that

14  work.

15          And, by the way, they won't tell us who the custodian

16  is.  It's just amazing that they want this federal court to

17  dismiss this lawsuit on the basis of the statute asserting

18  that, well, all they need is an agreement between them and the

19  custodian, but they won't tell us who the custodian is or

20  produce the agreement.  If you want to make the argument, make

21  the argument, but you gotta produce the evidence in support of

22  your argument.  They've refused to do that, and, therefore, it

23  has no merit.

24          Thank you.

25          **THE COURT**:  Okay.  Thank you.

*23-10066; Brokerarte v. Detroit Institute of Arts*

1   The Court would just observe that the -- that the --

2   that eventually, although there are arguments for -- for the

3   plaintiffs in this case, eventually we're going to get to the

4   point that would have to deal with the provisions in the

5   statute that -- that the statute would necessarily require

6   dismissal in this case with the purpose of the statute being to

7   foster the exchange of art and cultural works between this

8   country and other nations, and it may be for the Court to

9   decide.  The interpretation of the statute is kind of

10  open-ended, given that the -- there's very little case law to

11  address these issues involving a statute that is -- that dates

12  from the 1960s and has been invoked sparingly since -- since

13  then.  Obviously, the interest of the DIA would be to avoid

14  being drawn into the dispute between this plaintiff and other

15  potential claimants as custodians, if not owners, of -- under

16  the statute.

17  So the Court will seek to assess the process of

18  making the determination here where there is a lack of guidance

19  in the agreement where we haven't seen the agreement entered

20  into by the DIA and the various parties that are just now

21  getting attention as representing various interests in the

22  potential dispute over ownership of the painting involved.

23  So the Court has the arguments and I will consider

24  these arguments further in a written order to resolve the

25  dispute.  As I indicated with the attorneys representing the

1  interests of the DIA, which is, of course, blameless in this

2  case, and the Court will identify, I think, in the order to

3  enter potential pathways for resolving the ownership dispute,

4  but without drawing the DIA unreasonably into the ultimate

5  determination, which, in this case, has been acknowledged, I

6  believe, by -- by the plaintiffs to raise issues of ownership

7  that will be addressed in some fashion and probably not in the

8  outcome of any dispute resolution here by this Court.

9          So, I will be taking this under advisement today and

10  I'll address an outcome that will have to occur sooner rather

11  than later, and I would encourage the attorneys here to address

12  the possibilities for resolving the dispute in a way that would

13  avoid the Court's ultimate ruling.

14          And in connection with the requests here, both sides

15  have indicated they believe their interest in the case should

16  allow for a bond to secure the interests.  I'm going to make

17  this ruling without requiring a bond and -- although the

18  question will be addressed in the opinion and order to follow.

19          So I appreciate the presentations by both sides and

20  take the matter under advisement to -- and if you need any help

21  in trying to come to an agreement that would resolve the case

22  short of -- short of having the Court's ultimate ruling, and

23  I'll be happy to help you, but in the meantime I'll be working

24  on the opinion.

25          So thank you very much for your presentations and

*Hearing on Plaintiff's Motion for Temporary Restraining Order*
*and Possession Pending Final Judgment*
*Thursday, January 19, 2023*

*Page 22*

1   we'll see you the next go-around, I guess.

2           **MR. PHELPS:**  Thank you, your Honor.

3           **MR. PAUWELS:**  Thank you, your Honor.

4           **THE CLERK:**  Please rise.

5           This Court is in recess.

6       (At 11:28 a.m., proceedings adjourned.)

7                       -   -   -

8               **C E R T I F I C A T I O N**

9           I certify that the foregoing is a correct

10  transcription of the record of proceedings in the

11  above-entitled matter.

12

13  s/ Timothy M. Floury, CSR-5780          1/24/2023
    Timothy M. Floury, CSR-5780             Date
14  Official Court Reporter

15                      -   -   -

16

17

18

19

20

21

22

23

24

25

            *23-10066; Brokerarte v. Detroit Institute of Arts*