Case No. 23-1062

_____

# United States Court of Appeals
# for the Sixth Circuit

_____

**BROKERARTE CAPITAL PARTNERS, LLC,**

*Plaintiff-Appellant,*

v.

**THE DETROIT INSTITUTE OF ARTS**,

*Defendant-Appellee,*

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable George Caram Steeh
Case No. 2:23-cv-10066
_____

**APPELLANT'S (1) REPLY IN SUPPORT OF EMERGENCY MOTION
FOR AN INJUNCTION PENDING APPEAL AND (2) RESPONSE TO
APPELLEE'S EMERGENCY MOTION TO DISSOLVE
ADMINISTRATIVE STAY AND TO DISMISS APPEAL**

_____

Aaron M. Phelps (P64790)
Neil Youngdahl (P82452)
Varnum LLP
Counsel for Plaintiff-Appellant
Bridgewater Place, P.O. Box 352, Grand Rapids, Michigan 49501-0352
(616) 336-6000
amphelps@varnumlaw.com
neyoungdahl@varnumlaw.com

## <u>INTRODUCTION</u>

Brokerarte presents the better interpretation of the Immunity from Seizure Act, 22 U.S.C. § 2459(a), and the preliminary-injunction factors weigh in its favor. Accordingly, the Court should issue an injunction that requires the DIA to retain possession of the Painting until this Court decides the merits of this appeal.[1] Further, the Court should deny the DIA's request for summary dismissal.

## <u>ARGUMENT</u>

An injunction pending appeal merely preserves the relative positions of the parties until this Court can decide the merits. *Cf. Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Here, the Court should issue an injunction pending appeal because Brokerarte "is likely to succeed on the merits of the appeal," and "will be irreparably harmed absent an injunction." *Monclova Christian Academy v. Toledo-Lucas Cnty Health Dep't*, 984

---

[1] The DIA claims the Court should deny Brokerarte's motion because Brokerarte "sat on its hands for more than two business days before seeking relief." Res. Br. 11-12. This assertion misconstrues the timeline. The district court issued its opinion at 4:25pm on Friday, January 20, 2023. Over the weekend, Brokerarte's counsel consulted with their client regarding grounds for appeal. Brokerarte filed a notice of appeal on Monday January 23, 2022, (R. 17), and requested that the DIA retain possession of the Painting via a letter to the DIA's counsel. This Court docketed the appeal on January 24, 2023 and, after the DIA did not respond to Brokerarte's letter, Brokerarte filed its emergency motion on January 25, 2023. Brokerarte did not sit on its hands. Moreover, given the district court's full consideration of the issues and holding that it lacked subject-matter jurisdiction, a motion in the district court would have been futile.

F.3d 477, 479 (6th Cir. 2020) (order granting injunction pending appeal). Moreover, preservation of the status quo will not injure the DIA, and the public interest favors an injunction. *Id*.[2]

## I.    BROKERARTE IS LIKELY TO SUCCEED ON APPEAL.

### A.    The State Department is Not Owed Total Deference Under the Act.

Although the DIA purports to rely on the Act's plain text, it ignores the first half of the statute and misinterprets the State Department's role in granting immunity. The statute can be broken into three parts. The first part outlines factual predicates that must be met for an object to be eligible for immunity:

> Whenever any work of art or other object of cultural significance is imported into the United States from any foreign country, pursuant to an agreement entered into between the foreign owner or custodian thereof and the United States or one or more cultural, educational, or religious institutions with the capacity to appropriately curate such object within the United States providing for temporary storage, conservation, scientific research, exhibition, or display within the United States at any cultural exhibition, assembly, activity, or festival administered, operated, or sponsored, without profit, by any such cultural, educational, or religious institution with the capacity to appropriately curate such object . . .

---

[2] To be clear, Brokerarte agrees with the DIA that the Court should consider these traditional injunction factors to decide this motion. Res. Br. 10. Brokerarte previously provided the "standard of review" only to inform how this Court examines Brokerarte's likelihood of success on appeal. When the Court ultimately decides the merits of Brokerarte's appeal, it will review the district court's decision de novo. Emerg. Mot. 6-7.

22 U.S.C. § 2459(a). The second part is the operative jurisdiction-stripping language:

> . . . no court of the United States, any State, the District of Columbia, or any territory or possession of the United States may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object . . .

*Id*. And the third part requires the Executive Branch to make certain judgment calls (and to make those decisions known) before immunity attaches:

> . . . if before the importation of such object the President or his designee has determined that such object is of cultural significance and that temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest, and a notice to that effect has been published in the Federal Register.

*Id*. So then, what does the Executive Branch "determine" under the Act? The plain language answers this question: only that the object "is of cultural significance" and that its temporary presence in the United States "is in the national interest." Because Congress specifically limited the Executive Branch's role to the provision's third part, the Executive Branch cannot "determine" whether the other factual predicates are met. A contrary interpretation would require the Court to cut the "determination" language from the third part of the statute and paste it into the first part. Courts do not redline statutes, no matter how confident they are that the People's representatives could have written better language. *Keen v. Helson*, 930 F.3d 799,

806 (6th Cir.2019) ("[C]ourts are not at liberty to rewrite a statute just because they believe that doing so would better effectuate Congress's purposes.")

As a matter of everyday museum administration, both the DIA and the State Department agree that the Executive Branch determines only cultural significance and national interest. The DIA's Registrar confirmed this view in her letter seeking immunity for the Van Gogh exhibit. Emergency Mot. 14-15. Likewise, the State Department's "Notice of Determinations" is limited to these two findings:

**DEPARTMENT OF STATE**

[Public Notice: 11783]

**Notice of Determinations; Culturally Significant Objects Being Imported for Exhibition—Determinations: "Van Gogh in America" Exhibition**

SUMMARY: Notice is hereby given of the following determinations: I hereby determine that certain objects being imported from abroad pursuant to agreements with their foreign owners or custodians for temporary display in the exhibition "Van Gogh in America" at the Detroit Institute of Arts, Detroit, Michigan, and at possible additional exhibitions or venues yet to be determined, are of cultural significance, and, further, that their temporary exhibition or display within the United States as aforementioned is in the national interest. I have ordered that Public Notice of these determinations be published in the **Federal Register**.

Res. Br. 6 (highlighting added). Although the Notice mentions, in passing, "certain objects being imported from abroad pursuant to agreements with their foreign owners or custodians," the sentence's structure (i.e. "I hereby determine that certain objects . . . are of cultural significance . . .") makes clear that this is not a "determination."

4

Moreover, the State Department's Notice is simply not what the DIA portrays it to be. This Notice does *not even mention* other predicates for immunity under the Act. For example, nowhere in the Notice does the State Department determine that the DIA's Van Gogh exhibit is "administered, operated, or sponsored, without profit." 22 U.S.C. § 2459(a). If the DIA's reading of the Act is correct and the State Department alone must find all factual predicates, this failure to determine the Van Gogh exhibit's profitability *forecloses granting immunity to the Painting*.

In response to the Act's plain language, common understanding, and everyday administration, the DIA relies on a decades-old, unappealed opinion from the Southern District of Alabama. *See Magness v. Russian Fed.*, 84 F. Supp.2d 1357 (S.D. Ala. 2000). Before the district court issued its opinion below, no court had ever adopted *Magness*'s view that courts owe total-and-complete deference to the State Department under the Act. And for good reason: this deference theory is not only an abdication of judicial power, it is also premised on irrelevant case law. The *Magness* court relied on *McHenry v. Bond*, a case where the Eleventh Circuit applied the Administrative Procedure Act's arbitrary-and-capricious standard to an agency's adjudicative findings. 668 F.2d 1185, 1190 (11th Cir. 1982). Of course some level of deference is owed in that context. But even *McHenry* does not require courts to reflexively defer to the Executive Branch. There, the court held that the agency's decision was "lacking in a sound rationale" and remanded for further proceedings.

5

*Id*. at 1190, 1195.  In sum, the absolute-deference theory advanced by DIA and adopted by the district court is unanchored to any sound precedent.

### B.      The Act's Plain-Language Confirms That Congress Intended to Further Cultural Exchange by Protecting Property Rights.

The DIA next appeals to "legislative intent."  Res. Br. 15.  Congress's "authoritative statement" on its intent "is the statutory text, not the legislative history." *Sherfel v. Newsom*, 768 F.3d. 561, 569 (6th Cir. 2014).  The Act's language is clear that its purpose is to protect "foreign owners and custodians." *See* Emerg. Mot. 16-19.

The DIA ignores the Act's protection for foreign owners and custodians and instead asserts that the Act is intended to promote an unqualified cultural exchange. Res. Br. 2-3 (relying on H.R. Rep. No. 1070, 89th Cong., and an anecdote about the Act's legislative history retold by a law student in his 1985 note).  But even if the Act has such an abstract purpose, the means to that end is its protection of the property rights of foreign owners and custodians. *See Keen*, 930 F.3d at 806 ("Every statute aims not only to achieve certain ends, but also to achieve them by particular means and vague notions of statutory purpose provide no warrant for expanding those chosen means.") (brackets and internal quotation marks omitted).  Thus, even the DIA's broad view of the Act's purpose is consistent with the statutory requirement that a foreign owner or custodian be on one side of the loan agreement. Emerg. Mot. 16-18.

## II.    Brokerarte Will Suffer Irreparable Harm if the DIA is Allowed to Dispose of the Painting Before this Court Decides its Appeal.

The DIA asserts that Brokerarte will not face irreparable harm if it disposes of the Painting immediately because "[a]ny claims of Appellant regarding the Painting can be adjudicated in a dispute between interested parties in a court with jurisdiction over such matters."  Res. Br. 17.  The DIA then asserts—without any citation to the record—that "[b]oth the lender of the Painting and Appellant's sole owner are from Brazil," so they can litigate the question of ownership in a Brazilian court.  *Id.*

There is no evidence in the record that the Painting's "lender" is "from Brazil."  Below, the DIA's curator, Dr. Jill Shaw, merely asserted that the Painting is "on loan to the DIA from a foreign lender."  (Decl. of Dr. Jill Shaw, R. 12-2, PageID.69).  Dr. Shaw did not describe the purported lender's citizenship or nationality, nor did she give any identifying information.  The DIA cannot now shoehorn facts into the record through footnotes in an appellate brief.

Moreover, Brokerarte will suffer irreparable harm if the DIA disposes of the Painting before this Court can hear the merits of its appeal.  Harm is irreparable if it is not "fully compensable by money damages."  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  A harm is "not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate."  *Id.*

The loss of unique artwork is irreparable harm. *See, e.g., Robins v. Zwirner*, 713 F. Supp. 367, 374 (S.D.N.Y. 2010); *Uncanny Valley Prods., LLC v. Ingalls*, Case No. 5:18-cv-778, 2018 WL 6177240, at *2 (C.D. Cal. July 2, 2018). As *Robins* explains, "[o]riginal works of art are within the small category of intrinsically unique goods for which a specific performance remedy [i.e. injunctive relief] is appropriate. This is because a painting's value depends in large part, on the purchaser's aesthetic sensibilities and the eye of the beholder—accordingly, affixing an appropriate monetary remedy for these goods is difficult." 713 F. Supp. at 374 (internal citations and quotation marks omitted).

There is only one "The Novel Reader" by Vincent van Gogh. The DIA does not dispute that Brokerarte owns the Painting or that Brokerarte has been attempting to recover its property for years.[3] If the DIA can dispose of the Painting now by returning it to some anonymous person, Brokerarte will lose the chance to reclaim its one-of-a-kind property. This loss would cause irreparable harm to Brokerarte, so the Court should maintain the status quo by ordering the DIA to retain possession.

---

[3] Throughout this litigation, the DIA has stressed that Brokerarte did not report the Painting stolen. Res. Br. 18. This is a red herring. The DIA points to no authority that would deprive Brokerarte of its undisputed ownership interest in the Painting because it declined to report the Painting as stolen in certain voluntary international databases. There is no such reporting requirement, so this is irrelevant to what the Court must decide.

**III.**    **AN INJUNCTION WILL NOT HARM THE DIA, OTHER U.S. ART MUSEUMS, OR INTERNATIONAL CULTURAL EXCHANGE.**

The DIA baldly asserts that giving the Court the opportunity to fully consider Brokerarte's appeal would "threaten the ability of U.S. art museums to assemble world-renowned exhibitions . . . likely chilling the willingness of foreign lenders to lend art to U.S. institutions." Res. Br. 19.  This is pure speculation: the DIA offers no support for its belief that this Court will usher in a new cultural Dark Age by even considering these issues.  Moreover, contrary to the DIA's assertion that Brokerarte "seeks to drag the DIA through prolonged litigation that is expressly barred by statute," the Act does not provide immunity from suit, nor does it grant immunity to museums.  It merely immunizes certain objects.  Thus, this litigation is not itself a harm.

**IV.**    **THE PUBLIC INTEREST FAVORS AN INJUNCTION.**

No one in this litigation disputes Brokerarte's ownership interest in the Painting.  "The public has an interest in ensuring the right to possession of one's own property is enforceable." *Sutton Leasing, Inc. v. Veterans Rideshare, Inc*., 468 F. Supp.3d 921, 929–30 (E.D. Mich. 2020).

## V.  THE COURT SHOULD NOT DISMISS THIS APPEAL.[4]

The only question currently before the Court related to this appeal's merits is whether Brokerarte is "*likely* to succeed[.]" *Monclova*, 984 F.3d at 479 (emphasis added).  In response to Brokerarte's motion, the DIA asks the Court to dismiss this appeal without the opportunity to fully brief its merits because the Act applies.  Res. Br. 21.  That assumes the outcome of this Court's eventual merits determination.  The district court dismissed this suit under the Act and Brokerarte appealed so that this Court can review that decision.  Moreover, this Court surely can consider the merits question of whether the Act applies.  *Freed v. Thomas*, 976 F.3d 729, 739 (6th Cir. 2020) ("Of course, a federal court always has jurisdiction to determine its own jurisdiction.").

Accordingly, even if this Court denies an injunction pending appeal, Brokerarte still has a right to a full merits review of the district court's dismissal of its claim.  *See Gelboim v. Bank of America Corp.*, 574 U.S. 405, 407 (2015) ("An unsuccessful litigant in a federal district court may take an appeal, as a matter of

---

[4] Brokerarte sees no reason to respond at length to the DIA's request for immediate dissolution of the administrative stay.  The Court imposed this stay for a reason, so the stay should remain until the Court decides Brokerarte's motion for an injunction pending appeal.  At that point, the stay will either be replaced by an injunction or dissolved.

right, from a final decision of the district court.") (internal quotations and brackets omitted). The DIA's request for dismissal must therefore be denied.

## CONCLUSION

For these reasons, Brokerarte respectfully requests that this Court preserve the status quo by (1) granting its motion and entering an injunction requiring the DIA to retain possession of the Painting pending this appeal, and (2) denying the DIA's request to summarily dismiss this appeal without the opportunity for merits briefing.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendants-Appellants

Date: February 1, 2023            By:*/s/ Neil Youngdahl*_____
                                           Aaron M. Phelps (P64790)
                                           Neil Youngdahl (P82452)
                                 Business Address, Telephone, and E-mail:
                                           Bridgewater Place, P.O. Box 352
                                           Grand Rapids, MI 49501-0352
                                           (616) 336-6000
                                           amphelps@varnumlaw.com
                                           neyoungdahl@varnumlaw.com

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P.

27(d)(2)(C) because this document contains 2,505 words.

2.      This document complies with the typeface and type-style requirements

of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a

proportionally spaced typeface using 14-point type.


Date: February 1, 2023                    By: */s/Neil Youngdahl*
                                               Neil Youngdahl (P82452)
                                               neyoungdahl@varnumlaw.com

## **CERTIFICATE OF SERVICE**

I certify that on February 1, 2023, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of the filing to all ECF filing participants.


Date: February 1, 2023                        By: */s/Neil Youngdahl* _____
                                                      Neil Youngdahl (P82452)
                                                      neyoungdahl@varnumlaw.com