Case No. 23-1062

# United States Court of Appeals for the Sixth Circuit

**BROKERARTE CAPITAL PARTNERS, LLC,**

*Plaintiff-Appellant,*

v.

**THE DETROIT INSTITUTE OF ARTS**,

*Defendant-Appellee,*

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable George Caram Steeh
Case No. 2:23-cv-10066

_____

**APPELLANT'S (1) REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL AND (2) RESPONSE TO APPELLEE'S MOTION TO VACATE PRELIMINARY INJUNCTION**

_____

Aaron M. Phelps (P64790)
Neil Youngdahl (P82452)
VARNUM LLP
Counsel for Plaintiff-Appellant
Bridgewater Place, P.O. Box 352, Grand Rapids, Michigan 49501-0352
(616) 336-6000
amphelps@varnumlaw.com
neyoungdahl@varnumlaw.com

Appellant Brokerarte Capital Partners, LLC respectfully requests that this Court grant its motion for voluntary dismissal pursuant to Federal Rule of Appellate Procedure 42(b)(2), and partially deny the relief requested by Appellee the Detroit Institute of Arts (the "DIA"). In support of this, Brokerarte states as follows:

1. The purpose of this response/reply is to convey three things to the Court:

    a. Because this appeal is now moot, this Court lacks subject-matter jurisdiction over this proceeding (even if the questions it once presented were important) and therefore cannot grant the DIA's request for affirmance of the district court's judgment. *See, infra,* ¶¶ 2-11.

    b. Brokerarte does not oppose the DIA's request to vacate this Court's preliminary injunction. *See, infra,* ¶¶ 12-15.

    c. The DIA did not oppose Brokerarte's motion with respect to the terms of dismissal, so the Court should dismiss this case with prejudice and without costs and fees. *See, infra,* ¶ 16.

2. For months, the DIA has argued that this case should not be in federal court. Brokerarte now agrees—albeit for a reason different than what the DIA has trumpeted for so long.

3. Article III of the United States Constitution empowers the federal courts to hear only "cases or controversies." U.S. Const. art. III, § 2, cl. 1. This Court has described the case-or-controversy requirement as "a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland University Bd. of Tr.*, 639 F.3d 711, 713 (6th Cir. 2011). If events occur during the case, including during the appeal, that make it "impossible for the court to grant any effectual relief whatever to a prevailing party," the appeal must be dismissed as moot. *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

4. "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Hodges v. Schlinkert Sports Assocs., Inc.*, 89 F.3d 310, 312 (6th Cir. 1996) (internal quotation omitted).

5. As a result of a confidential settlement, Brokerarte no longer seeks possession of the Painting. Because Brokerarte sought only injunctive relief in this suit (i.e. a court-order compelling the DIA to return the Painting to it), Brokerarte's disclaimer of any current possessory interest means that it now "lack[s] a legally cognizable interest in the outcome" of this suit. *Id*. This case is therefore moot.

6. The DIA does not dispute that this case is now moot, nor does it mention that mootness deprives this Court of Article III subject-matter jurisdiction.

Instead, its argument for not dismissing this suit immediately is that "[t]his matter is of great public concern." DIA's Res. ¶ 9.

7. There is no great-public-concern exception to Article III's case-or-controversy requirement. This Court has rejected the idea that Article III goes away just because a case formerly presented a question that was important to some:

> The "case or controversy" requirement prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public. If advisory opinions "are ghosts that slay," Felix Frankfurter, A Note on Advisory Opinions, 37 Harv. L.Rev. 1002, 1007 (1924), it is hard to grasp why the risks associated with them would be ameliorated, as opposed to accentuated, when the public has a keen interest in the resolution of the issue. **Matters of great public interest are precisely the kinds of issues that demand the federal courts to be most vigilant in this area—vigilant that the powers they exercise are powers the Constitution gives them and vigilant that they exercise those powers in disputes with the "clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument."** *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

*Fialka-Feldman*, 639 F.3d at 715 (emphasis added).

8. The DIA provides no support for the idea that this Court can affirm judgments in important-but-moot cases. The crux of its argument is that "[t]his Court has broad discretion in considering a voluntary motion to dismiss" and "may deny voluntary dismissal if the lower courts would benefit from immediate consideration of an issue of public importance." DIA Res. ¶ 8. Neither of the cited

4

out-of-circuit cases involves an instance where the motion was prompted by a loss of subject-matter jurisdiction under Article III. *See Am. Auto. Mfrs. Ass'n v. Comm., Mass. Dept. of Env. Prot.*, 31 F.3d 18, 22 (1st Cir. 1994) (motion to dismiss was based on unfavorable intervening case law); *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004) (denying motion to dismiss that did "not even cause the petition to become moot."). *Fialka-Feldman* squarely controls this issue and mandates immediate dismissal.

9. Contrary to the DIA's insinuations about why Brokerarte filed a motion for voluntary dismissal (as if it could know), Brokerarte did not seek dismissal "only after the intervention of the United States made clear the errors in Brokerarte's argument[.]" DIA Res. 12. Rather, Brokerarte filed its motion as soon as it effectuated the settlement agreement, which had been the subject of negotiation long before the United States ever intervened.

10. The DIA, through its counsel, is very comfortable opining on Brokerarte's subjective motivations. It has invariably assumed bad faith. For example, according to the DIA, "Brokerarte improperly seeks dismissal of this appeal to avoid an unfavorable ruling on the merits and preserve the uncertainty caused by the Court's Injunction Pending Appeal[.]" DIA's Res. 1. Apparently it does not occur to the DIA that, although the parties have reasonably disagreed on the application of the Immunity from Seizure Act, Brokerarte can recognize that

mootness deprives this Court of Article III jurisdiction. Moreover, it is unclear why Brokerarte would benefit from avoiding "an unfavorable ruling on the merits"— which, presumably, can be no more unfavorable than *the district court's decision dismissing its case*—or preserving alleged uncertainty in the art world. And, in any event, this Court found that "Brokerarte has shown a likelihood of success on its argument that the district court was not divested of authority to determine if the antecedent requirements [of the Act] were met," CA6 Dkt. 22-2, and Brokerarte filed a principal brief explaining why the district court's decision was misguided.[1] The idea that Brokerarte is now ducking a merits adjudication for some reason is absurd.

11.     This case's mootness means that this Court now lacks Article III subject-matter jurisdiction, so it must reject the DIA's request for an advisory opinion affirming the district court's decision.

12.     On the other hand, Brokerarte does not oppose the DIA's request to vacate the preliminary injunction.

13.     Brokerarte does note, however, that the injunction's likelihood-of-success finding raises an interesting jurisprudential question. The

---

[1] Brokerarte planned to file a reply brief, explaining the errors in the arguments advanced by the DIA and the United States, but this case became moot on March 13, 2023—the day before the reply brief was due.

Court found that "Brokerarte has shown a likelihood of success on its argument that the district court was not divested of authority to determine if the antecedent requirements [of the Act] were met[.]" CA6 Dkt. 22-2. Vacatur of only the preliminary injunction will leave intact the district court's opinion—which this Court found likely to be erroneous. Although federal courts' "ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss," *Lewis v. Cont'l Bank Co.*, 494 U.S. 472, 482 (1990), mootness "by reason of settlement" justifies vacatur only in exceptional circumstances. *See U.S. Bancorp Mortg. Co., v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994) ("We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. **This is not to say that vacatur can never be granted when mootness is produced in that fashion**.") (emphasis added).

14. Brokerarte takes no position on whether vacatur of the district court's opinion is appropriate under these circumstances, but merely notes that vacating the injunction, and not the district court's opinion, may create an implication in the case law that this Court does not wish to create, especially because the opinion is now unreviewable.

15. Brokerarte also notes that the DIA's request that the injunction be declared "without any precedential or persuasive impact" is strange. DIA Res. ¶ 16. The injunction is an unpublished, unsigned order; it is inherently non-precedential,

even if it is not vacated.[2]  *See, e.g., Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011).  And Brokerarte is unaware of any authority that would allow this Court to preemptively declare that its order cannot be persuasive to *any court, for all time, and, under any circumstances*.  It seems odd for this Court to dictate what can and cannot be persuasive to another court in a future case.  Accordingly, the Court should merely vacate the injunction, and not make the broad pronouncements that the DIA requests.

16.    Finally, Brokerarte notes that the DIA did not oppose the terms of dismissal that Brokerarte requested under Rule 42(b).  The Court should therefore dismiss this appeal with prejudice and without costs or fees.

## **CONCLUSION**

For these reasons, Brokerarte respectfully requests that this Court grant its motion for voluntary dismissal with prejudice and without costs or fees, and deny the DIA's request for affirmance.  Further, Brokerarte does not oppose vacatur of the preliminary injunction.

---

[2] The DIA points out that Brokerarte cited the injunction in its principal brief. DIA Res. ¶13.  Even there, however, Brokerarte acknowledged that the order was not binding precedent.  Brokerate's Br. 17.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendants-Appellants

Date: March 21, 2023					By:*/s/ Neil E. Youngdahl*
    Aaron M. Phelps (P64790)
    Neil Youngdahl (P82452)
Business Address, Telephone, and E-mail:
    Bridgewater Place, P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    amphelps@varnumlaw.com
    neyoungdahl@varnumlaw.com

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(C) because this document contains 1685 words.

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using 14-point type.

Date: March 21, 2023                    By: */s/Neil E. Youngdahl*
                                             Neil Youngdahl (P82452)

## CERTIFICATE OF SERVICE

I certify that on March 21, 2023, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of the filing to all ECF filing participants.

Date: March 21, 2023                    By: /s/Neil E. Youngdahl
                                                                                      Neil Youngdahl (P82452)